[No. 8803.]

## THE PEOPLE EX REL. V. CAPP.

1. CONSTITUTIONAL LAW—*Governor*—*Power of Appointment to Office.* As to offices created by the Constitution, and the appointment to which is committed to the Governor, his discretion is not to be limited or impaired by legislation. As to offices created by statute, the legislature may commit the appointed to the Governor, or to any other officer or board. (398.)

The provisions of the Civil Service Law requiring the appointment to particular places in the civil service of the persons standing highest in the eligible list is not in conflict with sec. 1 of Art. IV of the Constitution. (398.)

2. CIVIL SERVICE—*Power of the Legislature.* In the appointment of officers of the Civil Service, as well as in prescribing their duties, the Legislature is supreme. (400.)

3. ——*Appointment of ineligible person, e. g.* one not standing highest in the eligible list, is void. (403.)

4. WARDEN OF THE STATE REFORMATORY—*Appointment.* The appointment of the warden of the State Reformatory is not committed to the Governor by sec. 6, art. iv. of the Constitution, being "otherwise provided for," within the meaning of that section. The Constitution not conferring upon any officer the power to appoint to this office, it rested with the legislature to confer the power, and take it away, at its pleasure.

Sec. 6249 of the Revised Statutes is repealed by the Civil Service Law. (Laws 1907, c. 117, Laws 1913, p. 682.) (400, 401.)

Senatorial confirmation of the appointment of the Warden is not required. (402.)

5. PUBLIC OFFICER—*Appointment Where There Is No Vacancy.* is void. (402.)

*Error to Chaffee District Court.* Hon. CHARLES CAVENDER, Judge.

Mr. GILBERT A. WALKER, Mr. FRANK SWANCARA and Mr. JOSEPH W. CLARKE, for plaintiff in error.

Mr. GEORGE K. HARTENSTEIN and Mr. H. L. MCGINNIS, for defendant in error.

Mr. Justice BAILEY delivered the opinion of the court.

The action is in *quo warranto,* to try title to the office of warden of the state reformatory at Buena Vista. The de-

fendant Capp was, upon competitive examination in which he stood highest, appointed such warden on February 1st, 1914, under the civil service law of 1907, as amended by the initiated bill of 1912. Thereafter he duly qualified and was in possession of the office when this suit was commenced, July 12th, 1915, but his appointment was never confirmed by the state senate. On the theory that there was a vacancy in the office on the convening of the legislature, because Capp's appointment was in vacation and had not been confirmed, Shaw, the claimant, on April 10th, 1915, was named for the position by the governor, and the state senate on the same day in regular session duly confirmed the appointment.

The answer to the complaint contains six separate and special defenses, to each of which demurrers were filed by the relator. Only two of these special defenses need be considered, namely, the second and fourth, demurrers to which were overruled. The relator elected to stand by his demurrers, a judgment of dismissal was entered, and he brings the case here for review on error.

The second separate and special defense alleged in substance that the defendant Capp took a competitive civil service examination; that he was duly certified by the Civil Service Commission as the person standing highest on the most appropriate eligible list for said office; that pursuant to such certification he was duly appointed; that he had never been removed from said office; that no charges of any kind had been preferred against him; and that his appointment under the civil service law was during good behavior and until removed for cause. The fourth separate and special defense alleged in substance that the claimant, Shaw, at an examination by the Civil Service Commission held to create an eligible list, from which to fill the office in question, received a rating of only 60%, and that such rating did not entitle him to be, nor has he ever been, certified as a person eligible to be appointed to such office.

Plaintiff's first contention is that the Civil Service Law of 1907, as amended in 1912, is unconstitutional in so far as it relates to appointments of heads of departments, or heads of state institutions. The contention is based upon the assumption that the law deprives the Governor of discretion, because only one name is certified, the claim being that this law conflicts with section 1 of article IV of the Constitution, which provides, among other things, that "the officers of the executive department * * * shall perform such duties as are prescribed by this Constitution or by law." The argument is that the power of appointment necessarily involves the exercise of discretion, and that if the discretion of the Governor in making the appointments is taken away, he is thereby deprived of the power to perform the duties prescribed by the Constitution.

This proposition is sound when applied to constitutional officers, but in this case counsel have fallen into error in their conclusion because they have failed to distinguish between officers provided by the Constitution and officers created by statute. There is no provision in the Constitution giving the Governor power to appoint the warden of the reformatory, or that requires the Legislature to confer upon the Governor the power to appoint that officer. The Legislature was therefore free to confer that power upon some other official or board, as it might see fit, and because it originally conferred the power upon the Governor is no reason why that body may not either qualify that power, or, if so disposed, take it away entirely. Had the Constitution created the office of warden, or had it provided that the Governor should appoint the warden when the legislature created the office, it may be conceded that then the Governor's discretion could not be interfered with by the legislature. Hence it is plain that the statutory provision here assailed in no sense contravenes the constitutional provision in question.

Neither is it true, as argued, that section 6 of article IV of the Constitution controls as to the appointment of the warden of the reformatory. This section reads:

"The governor shall nominate, and by and with the consent of the senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. *  *  *  *  ·"

The appointment of the warden of the State Reformatory is otherwise provided for, and under the decision of the appellate courts of this state,—*People v. Osborne,* 7 Colo. 605, 4 Pac. 1074; *Benson v. People,* 10 Colo. App. 175, 50 Pac. 212; *Brown v. People,* 11 Colo. 109, 17 Pac. 104; *Trimble v. People,* 19 Colo. 187, 34 Pac. 981, 41 Am. St. 206,— the statute which provides for the manner of appointment of such officers is controlling. The following extract from 29 Cyc., page 1379, is also applicable:

"Where the power of appointment is not vested in an authority by the constitution there would seem to be no question with regard to the power of the legislature to impose limitations upon the discretion of the appointing officer, or to authorize some other body, such as a state or local civil service commission, to impose such limitations. It would also seem proper under such conditions for the legislature to provide that the appointment should be made as a result of the selection of the one standing highest on a list made up of the successful contestants at competitive examinations."

In volume 5 of Ruling Case Law, cited by relator in his brief, page 612, this is said:

" *  *  *  But a civil service law would be unconstitutional if it provided for or permitted the certification of only one name upon requisition to the commission for the names of those eligible for appointment in filling a particular vacancy, where the power of appointment of public

officers and employees is vested by the constitution of a state in designated officials."

Our Constitution does not confer upon any officer the power to appoint a warden of the reformatory, hence it rested solely with the legislature to give that right, and take it away. It had exclusive power to say who should appoint the warden of the state reformatory, and to qualify or modify the appointing power by such limitations as it chose to impose. The Legislature has the right to change its laws. It had the same power to prescribe the manner of appointing a warden of the reformatory, as in the civil service law provided, that it had when it provided for the manner of his appointment in the act creating the institution.

No one questions the proposition that the Legislature cannot interfere with the powers conferred upon the Governor by the Constitution, or limit those powers, any more than the Governor can successfully question, interfere with or limit the powers conferred upon the Legislature by that instrument.

The warden of the reformatory and all other officers placed in the classified service of the civil service law, as amended in 1912, are statutory officers. Their duties, as well as the manner of their appointment, are provided for by statute, not by the Constitution, and therefore, in providing their duties and the manner of their appointment, the Legislature is supreme.

It is further contended that section 6249, R. S. 1908, the so-called reformatory statute of 1889, a portion of which reads as follows:

"The warden (of the reformatory) shall be appointed by the governor, by and with the consent and advice of the senate, and shall hold his office for two years, or until his successor is appointed and qualified, unless sooner removed by the governor," is still in force. Upon this proposition it is claimed that the Civil Service Law of 1907, as amended

in 1912, did not affect the office of warden of the reformatory, and does not repeal the above quoted section.

Section 3 of the Civil Service Act referred to provides:

"All appointive officers and employees  *  *  *  shall be included in the classified service,  *  *  *

Except as otherwise provided in the constitution, all appointments to positions in the classified service shall be without reference to the senate, and for good behavior." Laws 1913, p. 682.

This statute placed the warden in the classified service, and his tenure was during good behavior and until removed for cause according to law. With the two provisions both in force we are confronted with this condition: The statute of 1889 says that the warden shall be appointed by the Governor, by and with the advice and consent of the Senate, and shall hold office for two years, while the statute of 1912 says the warden shall be appointed without reference to the Senate, and shall hold his office during good behavior. These provisions are so plainly in conflict that both cannot stand. By all recognized rules of construction the later must prevail and the earlier one give way. While repeals by implication are not favored, they must and should be recognized where, as here, the legislative intent to substitute a new law for an old one upon the same subject is clear. The plain purpose of the Civil Service Law and the intent of the Legislature and the people enacting it was to substitute the merit system for the old doctrine of "to the victor belongs the spoils," in the civil service of the state. It is clearly apparent that it was the purpose of the General Assembly and of the people by this legislation to change the manner of appointment of the warden and the tenure of his office as provided by the civil service statute, thereby repealing the law of 1889 upon the subject. This court has repeatedly recognized and sanctioned the doctrine of repeals by implication, as indicated in the following cases: *Lovelace*

*v. Tabor*, 29 Colo. 62, 66 Pac. 892; *People v. Lange*, 48 Colo. 428, 110 Pac. 68; *Sugar City v. Commissioners*, 57 Colo. 432, 140 Pac. 809.

It is further argued that confirmation by the senate of the appointment of Capp was necessary. This contention is completely answered by what has already been said. Capp was appointed under the civil service law, as amended in 1912, which had the effect to repeal, as above indicated, the law providing for confirmation by the senate. The civil service law by express terms says that the warden shall be appointed without reference to the senate, and confirmation therefore was not necessary. *People v. Osborne, supra*; *Brown v. People, supra; Trimble v. People, supra; Benson v. People, supra*.

It is finally urged that the judgment should have been for the relator because he held his commission when this action was commenced, which was after, as is claimed, the civil service law of 1915 had gone into effect. That law is not properly before the court for consideration. When Shaw was appointed there was no vacancy in the office. There being no vacancy there could be no valid appointment. *State, etc., v. Harrison*, 113 Ind. 434, 3 Am. St. 663, 16 N. E. 384; *State v. Peele*, 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228. But even if it could be said that the civil service act of 1915 had gone into effect before this suit was begun, a question we do not determine, still its going into effect, in and of itself alone, would not have the result of creating a vacancy in the wardenship, and there is nothing in the record showing or tending to show that there is now, or that there has been, a vacancy in that office since the appointment and qualification of Capp.

The law in force at the time Shaw was appointed required the governor to appoint the person certified by the civil service commission. Upon this proposition this court, in *Shinn v. The People, ex rel.*, 59 Colo. 513, 149 Pac. 625,

speaking of the purpose of the civil service law in question, had this to say:

"The manifest intention of the people, in view of all the provisions of the civil service law, was to make the provision of amended section 10 apply to appointive offices and to the positions to be filled, rather than to persons. The scope of the application of this law is to be gathered from all of its provisions, which must be considered together to correctly ascertain its meaning.   It should be liberally construed to enforce its ostensible object, which is to promote the efficiency of the civil service by employing persons only who have shown, by proper examination, qualifications for positions therein, and not to put in, or keep in the service, persons who have not so qualified."

The record shows that the relator was ineligible, and his appointment was therefore void.   The appointment, being a nullity when made, was an empty and dead thing, and it does not appear that anything has since occurred, or could have occurred, to galvanize it into life.

The judgment of the District Court was right and should be affirmed.

*Judgment affirmed.*

Decision *en banc.*

Decided May 1, A. D. 1916.   Rehearing denied June 5, A. D. 1916.