Nos. 19,673 and 16,674.

CITY AND COUNTY OF DENVER, ET AL. *v.*
EARL R. RINKER, ET AL.
(366 P. [2d] 548)

Decided November 27, 1961.

442

Mr. DONALD E. KELLEY, City Attorney, Mr. JAMES H. SNYDER, Assistant, for plaintiffs in error.

Mr. CHARLES D. BROMLEY, for defendant in error Career Service Board. Messrs. VIVIAN, SHERMAN, KINNEY, STERLING & KEATING, for defendant in error John V. Staugas.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THE City and County of Denver and its Manager of Safety and Excise, John M. Schooley, brought two actions, and having suffered adverse judgments in the trial court in both are here on writ of error. Because both proceedings present the same issues, we have consolidated them for the purpose of this opinion.

In the first case, Denver and Schooley brought an action for a declaratory judgment against members of the Career Service Board of the City and County of

Denver and George Hays, a deputy sheriff of the City and County of Denver as a member of a class similarly situated.

In the second case, Denver and Schooley brought a proceeding in the nature of certiorari under Rule 106, R.C.P. Colo. against the members of the Career Service Board and John B. Staugas, a jailer of the county jail in the City and County of Denver, challenging the jurisdiction of the Career Service Board to grant a hearing to Staugas upon a demotion order issued by Schooley. The proceeding leading to the demotion order was initiated by Schooley in accordance with Career Service rules upon forms furnished by the Career Service Authority for use by "agencies under Career Service, City and County of Denver."

Denver and Schooley contend that deputy sheriffs and jailers are not subject to career service in the City and County of Denver; and that their appointment, promotion, demotion, suspension and discharge are for the uncontrolled discretion of the Manager of Safety and Excise.

The defendant's position is that this issue is determined by the specific language contained in the Career Service Amendment to the Charter of the City and County of Denver adopted by vote of the people of Denver.

Denver and Schooley answer this argument with the contention that if the language of the Charter Amendment in question places deputy sheriffs and jailers under Career Service, then the amendment is unconstitutional.

I.

*Does the Career Service Amendment to the Charter of the City and County of Denver encompass within its scope the positions of deputy sheriffs and jailers?* The question is answered in the affirmative.

In 1954 the people of Denver by popular vote passed the Career Service Amendment to the Charter of the

City and County of Denver. Section 1 of this amendment provided:

"The Career Service shall comprise *all of the employees* of the City and County of Denver and their positions, except "(1) Officers of the City and County of Denver including the classified service of the fire and police * * *." (Emphasis supplied.)

Section 1, sub-paragraphs (2) to (9), specify in detail various other positions and employees excepted from the Career Service.

Section 9 of the amendment provides as follows:

*"Repeals and Amendments.* All provisions of the charter of the City and County of Denver in conflict herewith are hereby repealed, and any and all provisions thereof partly inconsistent with or contrary hereto are hereby amended to conform to this amendment."

Denver and Schooley argue that sheriffs' deputies and jail guards are traditionally regarded as public officials and not as employees and therefore are exempted under the terms of the Career Service Amendment itself. They cite many cases from other jurisdictions stating this proposition. The short and complete answer to this argument is that the people of Denver by Charter Amendment have specifically determined who are "officers" and who are "employees." This they had the power to do. *McNichols, Auditor, v. People ex rel. Cook,* 95 Colo. 235, 35 P. (2d) 863.

Since the people of Denver have spoken in their Charter, it is not pertinent to the issue here to determine whether sheriffs and jailers were officers in the days of the Sheriff of Nottingham or at common law or in any other state. The question here is, are they "officers" or "employees" under the Charter of Denver?

A Charter amendment passed in 1916, which is now Section 315 of the Charter, provides:

*"Employes — Who are — Appointment — Compensation — Exceptions.* All persons in the employ of the city and county or any of the departments thereof, whose

salaries or compensations are not fixed in this charter amendment, are hereby declared to be employes, and shall be appointed by the mayor or department head, and their compensation shall be fixed by ordinance, except that this provision shall not apply to the appointing or the compensation of the employes of the public utilities commission, nor to the appointing of the employes of the auditor, civil service commission and election commission."

█ The salaries of deputy sheriffs and jailers are not set by the charter and they are therefore by charter definition, employees. *McNichols v. People ex rel. Cook,* supra. The 1954 Career Service Amendment to the Charter provided that *all* employees except officers and others specifically exempted were to be under the Career Service. Deputy sheriffs and jailers were not specifically exempted. The plain purpose of the amendment was to institute career service for all employees as defined in the Charter except those specifically exempted. This purpose was recognized and followed by all Managers of Safety following its adoption, including Schooley himself, as shown by the personnel action which he took in the Staugas matter.

Denver and Schooley contend, however, that even if deputy sheriffs and jailers are employees under the Charter they are not covered by the Career Service Amendment because two provisions of the Denver Charter enacted before the Career Service Amendment constitute an exception to the Career Service Amendment. Section 127 of the Charter provides that the ex-officio sheriff shall exercise the powers given to the sheriff by the Constitution or by general laws of the state. Section 313 of the Charter provides that whenever the Constitution or the general laws of the state permit the appointment of deputies or other subordinates by any county officer, the charter officer upon whom the powers and duties of such county officer have been conferred may appoint such deputy or deputies. C.R.S. '53, 35-5-5 pro-

vides that sheriffs may appoint deputies and revoke the appointment at their pleasure.

Denver contends that these provisions constitute special statutes and therefore must be considered as an exception to the general Career Service Amendment.

It is true, as Denver contends, that for general legislation to work a repeal of an existing special provision the intent to do so must be clear and unmistakable. *El Paso County v. Shelden,* 59 Colo. 499, 149 Pac. 616. It is also true that there is a presumption that all laws are passed with knowledge of those already existing and that the legislative body does not intend to repeal a statute without so declaring. *Harrington v. Harrington,* 58 Colo. 154, 144 Pac. 20. Counsel contends that under this doctrine the provisions of Sections 127 and 313 constitute an exception to the Career Service Amendment. Counsel overlooks the express statement of the people that all sections of the Charter in conflict with the Career Service Amendment are repealed and that all sections of the charter partly inconsistent with or contrary to the Career Service Amendment are amended to conform.

We must look to the intention of the people as expressed in the act itself to determine whether Sections 127 and 313 were intended to be repealed by the Career Service Amendment insofar as they conflicted with the Career Service Amendment and a system of career service set up for employees covered by Section 313 at the time of the amendment. A general repeal clause is useful in determining the intent and creates a strong implication concerning the intent of the people to repeal any statutes or portions of statutes in conflict therewith.

Moreover, the Career Service Amendment set up a system of career service for *all* employees and then specifically set out those positions which should be exempted from career service. By this solemn declaration it is clear that the people intended all employees of the City not exempted by the exceptions specifically set out

in the Career Service Amendment to be covered by career service. *People ex rel. Walker v. Capp*, 61 Colo. 396, 158 Pac. 143. When the legislative authority, in this case the people of Denver, have covered the entire field making specific exemptions, it must be presumed that it did not intend to exclude other personnel from the operation of the act.

The Career Service Amendment established the public policy that all employees of the City and County of Denver except those specifically exempted should be selected on a basis of merit and hold their positions on the basis of their fitness to perform the work. This declaration of the people will not be lightly swept aside because of common law tradition born of kingly prerogative.

Insofar as Sections 127 and 313 of the Charter conflict with the Career Service Amendment they have been repealed and the powers of appointment, removal, demotion, promotion and suspension granted under those sections must be exercised in accordance with the Career Service Amendment.

## II.

*Did the people of Denver have the power to include deputy sheriffs and jailers in a career service system?* The question is answered in the affirmative.

■ Article XX of the Colorado Constitution was adopted by a favorable vote of *all* of the people of the state of Colorado. By it, *all* of the people of the state of Colorado gave to the people of Denver the right to name their own officers and determine how they should be selected, their qualifications and tenure. All county officers and offices as such were abolished subject only to the provisions that the duties and acts required of them by the Constitution should be carried out by some officer so designated by the Charter. *People ex rel. Attorney General v. Cassiday,* 50 Colo. 503, 117 Pac. 357.

The office of sheriff is a county office and not a state office. *Thrush v. People,* 53 Colo. 544, 127 Pac. 937;

*Dixon v. People,* 53 Colo. 527, 127 Pac. 930. Thus the method of selection and tenure of the officer designated to carry out the duties of the position became the concern of the people of Denver by authority expressly granted to them by all of the people of the state under Article XX and this is true even though those officers might be required to perform duties which were of state-wide concern such as the duties imposed by constitution upon the County Clerk and Recorder, County Sheriff, Treasurer or Assessor.

Indeed the people of Denver did change the method of selection and tenure of the person designated by the Charter to carry out the duties of the sheriff by providing that he should be appointed by the Mayor. Elsewhere throughout the state by constitutional provision the office of sheriff is filled by election.

The people of Denver having the power to determine the method of selection, qualifications and tenure of the person who should perform the duties of sheriff, it follows as day follows night that the same power exists in the people of Denver to determine the method of selection and tenure of those "employes" carrying out duties which are the normal function of the sheriff.

Before the Career Service Amendment, the people of Denver by their Charter gave the department heads the right to appoint deputies where the constitution or the statutes permitted delegation of power and duties to subordinates. By the Career Service Amendment they circumscribed that right by providing that it could only be exercised in accordance with the Career Service rules.

Denver and Schooley's brief presents much authority on the power of the sheriff to appoint his deputies at common law and remove them at his will, but none of these authorities denies the right of the legislative body to change the common law right of unlimited appointment and removal of deputies by sheriffs, and the people of Denver, acting under the powers given them by Article XX of the constitution have so changed the method

of appointment and removal so that in Denver the appointment and removal of such deputies is upon merit and fitness to perform the work.

### III.

*Does the fact that statutes of the State of Colorado make the sheriff liable for the acts of his deputies guarantee the unrestricted right to hire or discharge his employees without regard to the merit system?* The answer is in the negative.

By C.R.S. '53, 35-5-5 sheriffs are made liable for the torts of their deputies. *People ex rel. v. Guthner,* 105 Colo. 37, 94 P. (2d) 699. Counsel cites many cases dealing with such liability where sheriff's deputies are placed under a Civil Service system. Typical of these cases is *Van Vorce v. Thomas,* 18 Cal. App. (2d) 723, 64 P. (2d) 772. In that case the court was concerned with the common law liability of a sheriff for the act of his deputies and not with a liability imposed by statute. It was there held that in the absence of statutory provisions making a marshall [sheriff] liable the court would not impose a common law liability where the deputies were appointed under Civil Service.

There is not even the slightest suggestion in that case that liability of the sheriff and civil service requirements for the appointments of his deputies cannot exist compatibly. The question of the sheriff's liability for the acts of his employees has no relevancy with respect to the power of the people of the City and County of Denver acting under the authority given by Article XX to determine the method by which the sheriff may appoint, demote or discharge his deputies or jailers.

The judgments of the trial court in both cases are affirmed.