464 P.2d 378

**Calvin L. RAMPTON, Governor of Utah, and the State of Utah, Plaintiffs and Appellants,**

v.

**Haven J. BARLOW, President of the Senate of the State of Utah, and Lorin N. Pace, Speaker of the House of Representatives of the State of Utah, et al., Defendants and Respondents.**

No. 11725.

Supreme Court of Utah.

Jan. 19, 1970.

---

384

Sidney G. Baucom, Salt Lake City, for appellants.

Rex J. Hanson and Merlin R. Lybbert, of Hanson & Baldwin, Salt Lake City, for respondents.

ELLETT, Justice:

This is a suit for a declaratory judgment brought by the Governor against the President of the State Senate and the Speaker of the House of Representatives to have a determination of the validity of Chapter 138, Laws of Utah 1969, insofar as that Act purports to confer on the two named defendants the power to appoint three members each to the newly created State Board of Higher Education.

The bill provides for a board of fifteen members, nine of whom shall be appointed by the governor, by and with the consent of the senate and three each by the presiding officer of each house of the legislature.

The parties disagree as to the interpretation to be placed upon the language of Article VII, Section 10, of our state Constitution, which reads:

The governor shall nominate, and by and with the consent of the senate, ap-

point all state and district officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. * * *

The Governor contends that he may appoint to all offices "which may be created by law, and whose appointment or election is not otherwise provided for" [by the Constitution]. There is much argument as to whether the phrase "provided for" is a "prepositional phrase" relating to the noun [constitution] or to the words "by law," and as to whether the last clause of the section quoted above is a "dependent adjective clause" and as to whether the framers of the Constitution were familiar with the importance of the word "herein."

It seems to us rather clear that the only meaning to be given to the clause is that the governor is to appoint to offices created by statute only when no method is provided by law for the election or appointment by someone other than the governor.

Section 7 of the Organic Act creating the Territory of Utah provided: "The governor shall nominate, and, by and with the advice and consent of the legislative council, appoint all officers not herein otherwise provided for." This was the law at the time of the constitutional convention, and by omitting the word "herein" from the language of the Constitution the framers thereof must have intended that the appointment by the governor would apply to all offices created by statute unless a prohibition could be found in the Constitution itself or the statute creating the office otherwise provided.

Let us consider some cases from other states.

People ex rel. Walker v. Capp, 61 Colo. 396, 158 P. 143 (1916) involved a civil service act enacted by the legislature providing for appointments based on competitive examinations. Article IV, Section 6, of the Colorado Constitution is similar to that of Utah insofar as the part in question is concerned. The court in holding that the appointing power was not in the governor said at page 144:

The appointment of the warden of the state reformatory is otherwise provided for, and under the decision of the appellate courts of this state,—[Citations omitted]—the statute which provides for the manner of appointment of such officers is controlling. * * *

The following statement from 29 Cyc. 1379 is applicable:

Where the power of appointment is not vested in an authority by the constitution there would seem to be no question with regard to the power of the legislature to impose limitations upon the discretion of the appointing officer, or to authorize some other body, such as a state or local civil service commission, to impose such

limitations. It would also seem proper under such conditions for the legislature to provide that the appointment should be made as a result of the selection of the one standing highest on a list made up of the successful contestants at competitive examinations.

Regardless of the construction which we place on the language in dispute herein, we have the same problem before us. Even by holding that the legislature can "otherwise provide" for an appointment, the question remains: Can the legislature reserve unto *itself* or *confer upon its presiding officers, the power of appointment?*

Another section of our Constitution must be considered in this connection, and that is Article V, Section 1, which reads:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

We read in Black's Constitutional Law at page 78: "The legislature cannot lawfully usurp any of the functions confided by the constitution to the executive department, such as the power to make appointments to office."

In Re Opinion of the Justices, 300 Mass. 596, 14 N.E.2d 465, 118 A.L.R. 166, 169, (1938), the statute provided that the majority of the justices of the Supreme Judicial Court could, if their judgment so required, remove from office clerks of court; and since these officers were involved in the administration of justice—judicial business—that part of the statute was held constitutional. However, another part of the statute provided for removal of mayors of cities; and in holding that the legislature could not confer on the courts this power to remove, the court said:

The proposed addition to the existing section 4 provides that the Justices "may, upon a petition brought by the attorney general, if in their judgment the public good so requires, remove a mayor of any city or a chief of police of any city or town." These officers are largely municipal or local in their field of operation. In the main, they perform executive duties. They have no intimate connection with the course or the administration of justice. The removal of such officers cannot rightly be said to be incidental to the judicial function. The reasons which upheld the statute as to the removal of district attorneys and other county officers are entirely wanting in the proposed bill as to the removal of mayors. * * *

The power to remove officers is executive in its nature. [Citations omitted]

Courts have no inherent power to remove elected or executive officers. * * * The members of the judiciary cannot be required to appoint such officers. [Citation omitted] Removal stands in general on the same footing. * * *

In the case of State ex rel. Collett v. Gorby, 122 Ind. 17, 23 N.E. 678 (1890), the office of director of the department of geology and natural resources was created, and the general assembly (legislature) of Indiana by election of its own members chose the defendant Gorby to fill the office. The plaintiff Collett was appointed by the governor. The question before the court was which party was entitled to hold the office. The court held:

* * * In the case of State ex rel. Jameson v. Denny, 118 Ind. 382, 21 N.E. 252, [4 L.R.A. 79,] it was held that the general assembly had no power to elect or appoint the members of a board of public works and affairs for the cities named in the act of March 9, 1889. That decision rests upon the grounds, as therein expressly stated—*First*, that so much of the act as attempted to confer on the general assembly the duty of electing or appointing the individual members of that board sought to confer on it executive or administrative functions which, under the constitution, it was forbidden to exercise; * * *. In the case of City of Evansville v. State, 118 Ind. 426, 21 N.E. 267, [4 L.R.A. 93,] and in the case of State

ex rel. Holt v. Denny, 118 Ind. 449, 21 N.E. 274, [4 L.R.A. 65,] it was held that the general assembly does not possess the power to elect or appoint the individual members of a metropolitan board of police and fire department provided for by an act of the general assembly of the 7th of March, 1889. * * *

* * * * * *

* * * By the express terms of the constitution the general assembly is prohibited from exercising executive or administrative function, except in cases expressly provided for by that instrument. * * *

A Nevada statute gave judges the power to grant certificates of authority to ordained ministers to perform marriages. In Galloway v. Truesdale, 83 Nev. 13, 422 P.2d 237 (1967), the Nevada court held that the legislature could not confer the power upon the courts and that any attempt to do so would be a violation of the separation of the powers of the three divisions of government.

The case of Springer v. Philippine Islands, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845, (1928), involved the power of the legislature to vest the voting power of government-owned corporate stock in a committee consisting of the governor-general, the president of the senate, and the speaker of the house of representatives. The Supreme Court of the United States in holding the

act to be in violation of the Organic Act said:

> Thus the Organic Act, following the rule established by the American constitutions, both state and Federal, divides the government into three separate departments—the legislative, executive and judicial. Some of our state constitutions expressly provide in one form or another that the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other. Other constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments. See Kilbourn v. Thompson, 103 U.S. 168, 190, 191, 26 L.Ed. 377, 386, 387. And this separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital—not merely a matter of governmental mechanism. That the principle is implicit in the Philippine Organic Act does not admit of doubt. [Citation omitted.]

> It may be stated then, as a general rule inherent in the American constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise either executive or judicial power; the judiciary cannot exercise either executive or legislative power. The existence in the various constitutions of occasional provisions expressly giving to one of the departments powers which by their nature otherwise would fall within the general scope of the authority of another department emphasizes, rather than casts doubt upon, the generally inviolate character of this basic rule.

> Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions. * * *

In re Opinion of the Justices, 302 Mass. 605, 19 N.E.2d 807 (1939), dealt with a question of the validity of a proposed statute which provided that a power of appointment was vested in the president of the senate and the speaker of the house of representatives. The court held as follows:

> We are of opinion, however, that the power of appointing such members cannot be conferred by law upon the President of the Senate and the Speaker of the House of Representatives, whether or not such members are required to be chosen from among the members of the Senate and of the House. "The power to appoint and the power to remove officers are in their nature executive powers." [Citations omitted.] The soundness of this general principle is not impaired by the fact that the Constitution explicitly empowers the General Court

"to name and settle annually * * * all civil officers within the said commonwealth," Part 2, c. 1, § 1, art. 4, and provides that the "senate shall be a court with full authority to hear and determine all impeachments made by the house of representatives, against any officer or officers of the commonwealth." * * *

There is some authority holding that the legislature may reserve unto itself the power to appoint.[1] However, we think better reasoning avoids such a holding. In addition to the constitutional grounds, there are common-sense reasons which are obvious. If the legislative body may create offices and appoint thereto, then it could change the administrative set-up of a state government at will; while if the appointment to any new offices was not permitted to the legislature, the tendency to change and shuffle the administrative agencies would be lessened and would only be effected when there was a public need for it.

■ The defendants point to a number of Utah statutes which create offices and provide for appointments other than by the governor. The practical construction placed on constitutional provisions, when long acquiesced in, is of aid to the courts in determining the meaning of the language of a constitutional provision, but it cannot be controlling so as to amend the Constitution by means of a series of mutual mistakes, and especially is this true where the language is otherwise clear.

Some of the statutes referred to have reserved unto the legislature or to the officers thereof the right to make appointments.[2] The answer to that is simply this: Such assumed power of appointment has never before been brought before this court for determination as to its constitutionality.

Under a pure democracy, where all of the people affected by a law are permitted to vote upon it, there is no need for a constitution, for the power of the people is behind every law which is enacted. In the town meetings of the early New England States, the same thing was more or less true. However, as population increased, it was not possible for all of the people to participate directly in the passage of laws. It therefore, became necessary in order for the people to maintain a control over the chosen representatives to give certain powers unto them and to retain other powers unto themselves by means of constitutions adopted by all the people of each state.

In all the states and in the federal system as well, those delegated powers have been divided into three departments of govern-

---

1. Lockwood v. Jordan, 72 Ariz. 77, 231 P. 2d 428 (1951) ; In re Terrett, 34 Mont. 325, 86 P. 266 (1906), dicta holding legislature could impose the duty of appointing upon district judges.

2. Utah Code Annotated 1953, Sections 20–1–7.3, 37–4–3, 49–7–8, 63–5–2, 63–7–4, 63–26–2, 73–10–2. (Since amended.)

ment: the executive, the legislative, and the judicial; and to insure the stability and continuance of this form of government and to secure unto themselves enduring liberty and freedom from tyranny, the people wisely wrote into their constitutions provisions similar to our own Article V, Section 1, which absolutely prevent any person charged with powers properly belonging to one department from exercising any of the functions appertaining to either of the others—except where the power was expressly so granted in the Constitution itself. This is not to say that the power to appoint is not left in the courts and the legislature insofar as it relates to agents, clerks, and ministers engaged in the work pertaining to such branch of government, for to allow the executive to appoint the officers necessary to the carrying out of the functions of an independent branch or division of government would prevent that division from being independent.

The holding in the case of State ex rel. Hovey v. Noble, 118 Ind. 350, 21 N.E. 244, 247 (1889), is in point:

> * * * A department without the power to select those to whom it must intrust part of its essential duties cannot be independent. If it must accept as "ministers and assistants," as Lord Bacon calls them, persons selected for them by another department, then, it is dependent on the department which makes the selection. To be independent the power of the judiciary must be exclusive, and exclusive it cannot be if the legislature may deprive it of the right to choose those with whom it shall share its labors or its confidences. If one kingdom possesses the right to send into another ministers and assistants, to share with the governing power its functions and duties, the latter kingdom is in no sense independent. * * *

So much has been said and written about the powers belonging to the three departments of government that it would be trite to attempt to restate them. It will be enough to say that the legislative branch should make the law, the judicial branch should be confined to interpreting it and all other power must of necessity be vested in the executive branch, which is charged with the enforcement of the law, the protection of the state's property, and the looking after the health, welfare, and peace of the people. In order to perform these various executive functions, the chief executive will need the assistance of many agents, officers, and ministers.

One of the functions of the executive department is the promulgation of education of the people under laws passed by the legislative department.

By Chapter 138, Laws of Utah 1969, the constitutionality of which in part is now questioned, the State Board of Higher Education is charged with the executive responsibility of carrying out the law as

enacted. The legislature has performed all of its functions in providing the law and the funds by which the will of the people through the various legislators and senators has been effected. However, the statute attempts to go beyond the power granted to the legislature in that it authorizes the highest officer of each house to appoint three members to the board and requires an approval by the senate of the nine members to be appointed by the governor. The control of the board, which performs an executive function, is thus effectively placed in the control of the legislature.

■ This court is of the opinion that insofar as the Act purports to allow three appointments to be made by each of the presiding officers of the two houses of the legislature, it is contrary to the provisions of Article V, Sec. 1, of the Constitution of Utah and is void.

The judgment of the lower court is, therefore, reversed with directions to enter a declaratory judgment in accordance with this opinion. No costs are awarded.

CROCKETT, C. J., and TUCKETT, J., concur.

Further Opinion of Justice ELLETT:

My concurring colleagues think that the opinion of the Court as above set out is sufficient for the decision of the issues of this case. However, it is my judgment that such is not the case and that it is proper and would be helpful for me to set forth in this "Further Opinion" my views on a matter which was raised in the complaint but not determined in the opinion. (My concurring colleagues do not join in this further opinion.)

Paragraph 1 of the prayer of the complaint is as follows:

1. Adjudging and declaring that said provisions of Section 5(1) of Senate Bill 10, 38th Legislature, relating to the appointive powers of defendants, are unconstitutional, void and of no force or effect for the reasons set forth above, and that plaintiff Calvin L. Rampton, as Governor of the State of Utah, has the exclusive power, subject to consent of the Senate, to appoint members of the State Board of Higher Education, created by Senate Bill 10.

In my opinion we have only done half of our work by the above decision. We have said that the Act is void as it relates to the appointive power of the defendants, but we have not yet said that the plaintiff has the power to appoint—subject to the consent of the senate—the six members improperly appointed by the defendants Barlow and Pace.

In fact, the concurring and dissenting opinions tend to cast grave doubts upon the validity of the entire act, and I want to make my position clear.

This is a case of partial invalidity of a statute, and the law in that regard is set out in 82 C.J.S. Statutes § 92 as follows:

A statute may be in part valid or constitutional and in part invalid or unconstitutional; and the language of the unconstitutional part may be referred to in order to clarify and sustain the part that is constitutional. If the parts are wholly independent of, or separable from, each other, the part which is valid or constitutional may stand while that which is invalid or unconstitutional will be rejected, provided the valid part is complete in itself and capable of being executed or enforced and of being given legal effect, and is fully operative as a law, provided such valid part fairly answers the object or purpose of the passage of the law, and provided the deletion of the unconstitutional part will not make the statute meaningless, impair its efficacy, destroy its main and essential features, or substantially affect its other features and purposes.

This rule applies even though the valid and the invalid parts are in the same paragraph, sentence, or section of the act.

On the other hand, the entire statute will be held void if the parts are inseparably connected with each other, or are so connected, or dependent on, each other in subject matter, meaning, or purpose that the good cannot remain without the bad, if the invalid provisions are integral parts of the act or enter so entirely into its scope and design that it would be impossible to maintain it without those provisions, or if the entire act is predicated on the invalid sections.

It is my opinion that our legislature was sincere when it stated the intent with which Chapter 138 L.U.1969 was enacted. That intent is stated in Sec. 2 of the Act, which reads:

It is the purpose of this act to afford the people of the State of Utah a more efficient and more economical system of high quality public higher education through centralized direction and master planning providing for avoidance of unnecessary duplication within the system, for the systematic and orderly development of facilities and quality programs, for coordination and consolidation, and for systematic development of the role or roles of each institution within the system of higher education consistent with the historical heritage and tradition of each institution.

The purpose of this act is to vest in a single board the power to govern the state system of higher education and within the board's discretion to delegate certain powers to institutional councils.

To make sure that the purposes of the Act would not be thwarted by the decisions of the courts, the legislature by Sec. 27

enacted a savings clause in the following language:

> If any provision of this act, or the application of any provisions to any person or circumstance, is held invalid, the remainder of the act shall not be affected thereby.

It thus seems obvious to me that the purpose of attempting to reserve unto the presiding officers of the two houses the right to appoint three members each to the State Board of Higher Education was not a motivating factor in passing the statute. To impute to the legislature such a motive is to accuse them of being willing to forego legislation of tremendous importance to the people of this state as set out in Sec. 2, supra, unless they can do an unconstitutional act to wit: participate in a constitutionally executive function of the government. I cannot believe that the honorable members of our legislature would be so crass and politically motivated as to want us to hold the entire Act unconstitutional unless the appointments are to be made as specified in the act, and this is especially true where the Act provides that no more than eight of the fifteen members can belong to the same political party. Those honorable members specifically said that if any of the provisions of the Act as it applies to any person or circumstance be held invalid, that the remainder of the Act shall not be affected thereby. I am, therefore, led to the unalterable conclusion that the legislature intended to have a State Board of Higher Education consisting of fifteen members and that if the provision for the appointment of any member thereto be held invalid that Act would otherwise stand and that the appointment should be made according to the laws of this state. It, therefore, follows that nine of the fifteen members of the Board have been properly appointed and that there are six vacancies the appointment to which has not been lawfully made. Therefore, those six vacancies should be filled by appointment as provided in Article VII, Sec. 10 of the Constitution of Utah, to wit: by the Governor, by and with the consent of the senate.

This to me is a reasonable interpretation to be placed upon the meaning of the statute, and it is one which gives life to the entire Act. Any other interpretation will cast doubt upon the validity of the Act and perhaps render it entirely impotent and of no force or effect.

We are not asked by either party to hold the entire Act unconstitutional, and we should not do so indirectly or by implication. Our duty is to hold it constitutional if by any reasonable construction we can do so. Gubler v. Utah State Teacher's Retirement Board, 113 Utah 188, 192 P.2d 580, 2 A.L.R.2d 1022 (1948); Snow v. Keddington, 113 Utah 325, 195 P.2d 234 (1948).

CROCKETT, Chief Justice (concurring specially):

I agree with the proposition that the attempt of the legislature to confer authority upon itself (its officers) to make appointments in the Executive Department, the effect of which could lead to legislative control of executive functions, is contrary to constitutional principles. And I am appreciative of the efforts of Justice Ellett in setting forth the reasoning and authorities which so demonstrate. But I think that, consistent with the principle of the separation of powers, and our own duty of judicial restraint arising therefrom, that the proposition just stated above fulfills the purpose of this case. Accordingly, I do not see either necessity or wisdom in making further observations or indulging in conjecture as to what other method of selection of the members of the Board of Higher Education, or whether the legislation would have been enacted at all, if the legislature had thought the method it did prescribe was improper. This is said notwithstanding the savings clause referred to. Such clauses are effective only as to separate provisions of an act which can stand independently. But if the parts of the Act are so interrelated that the voiding of one portion would so substantially change the nature of the legislation that it cannot fairly be determined what the legislative intent would have been, nor whether the legislation would have been enacted, it is not within the prerogative of the court to rule that certain portions of the Act are invalid and assume that the legislature would have enacted other interrelated portions of the Act without them. See Carter v. Beaver County, 16 Utah 2d 280, 399 P.2d 440; Pride Oil Co. v. Salt Lake County, 13 Utah 2d 183, 370 P.2d 355; and State By and Through Hansen v. Salt Lake City, 21 Utah 2d 318, 445 P.2d 691. I therefore do not believe that under this act either the Legislature or the Governor can make the six appointments which were designated to be made by the President of the Senate and the Speaker of the House of Representatives.

TUCKETT, Justice (concurring)

I concur in the decision of the court in reversing the judgment of the district court. I am of the opinion that Section 5(1), Chapter 138, Laws of Utah 1969, is unconstitutional and void insofar as it purports to confer upon the President of the Senate and Speaker of the House of Representatives power to appoint members of the State Board of Higher Education which was created by the act.

CALLISTER, Justice (concurring in the result):

I concur in the result of the majority opinion on the ground that Section 5(1) of Senate Bill 10, which confers certain powers of appointment to the State Board of Higher Education upon members of the Legislature, is unconstitutional in that it violates Article V, Section 1 of

the Constitution of Utah, which provides for the separation of powers of the three departments of government. The provisions of this one section of the act concerning the appointment of the members to the Board are interrelated, and it is not within the scope of this court's function to select the valid· portions of this section and conjecture that they should stand independently of the portions which are invalid;[1] therefore, all of Section 5 (1) is unconstitutional.

HENRIOD, Justice (concurring and dissenting):

I concur in the main opinion with respect to the unconstitutionality of the power of appointment given as to the six members, but dissent from the suggestion that the act is offensive *only* insofar as it purports to sanction the appointment of the six members of the fifteen member board; ergo, that the remaining nine members appointed by the governor constitutionally may remain in esse, and he may now appoint the other six.

I think all of Section 5(1) of Chapter 138, is unconstitutional. The board is created therein as well as the power to appoint its members, and these two key aspects of the legislation are so inseparably related as to rise or fall together.

It appears that the plaintiff, Governor Rampton, agrees, when he says that "Section 5(1) * * * is unconstitutional and invalid," and by saying in the last line of his brief that "Section ·5(1) * * * *must* be declared unconstitutional and invalid." (Emphasis added.)

---

1. State By and Through Hansen v. Salt Lake City, 21 Utah 2d 318, 325, 445 P.2d 691 (1968); Carter v. Beaver County Service Area No. One, 16 Utah 2d 280, 283, 399 P.2d 440 (1965); Pride Oil Co. v. Salt Lake County, 13 Utah 2d 183, 187, 370 P.2d 355 (1962).