505 P.2d 1193

**STATE BOARD OF EDUCATION,**
Plaintiff and Respondent,

v.

**STATE BOARD OF HIGHER EDUCATION,**
Defendant and Appellant,

University of Utah, a corporate body politic, and Utah State University Of Agriculture And Applied Science, Plaintiffs in Intervention and Respondents.

**No. 13003.**

Supreme Court of Utah.

Jan. 31, 1973.

Dennis McCarthy, of VanCott, Bagley, Cornwall & McCarthy, John H. Snow, of Worsley, Snow & Christensen, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Verl R. Topham, G. Blaine Davis, Bruce M. Hale, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

Edward W. Clyde, of Clyde, Mecham & Pratt, and Henry S. Nygaard, Salt Lake City, for the University of Utah.

Mark Madsen, Salt Lake City, for Utah State University Of Agriculture And Applied Science.

TUCKETT, Justice:

These proceedings were initiated on September 3, 1971, by the State Board of Education, the plaintiff herein, seeking a declaration of the district court that the Higher Education Act of 1969 is unconstitutional and void. A judgment was entered in the district court on July 17, 1972, which granted the declaratory relief sought by the plaintiff, and on July 26, 1972, a supplemental judgment was entered by the district court on the issues raised by the complaints in intervention filed by the University of Utah and Utah State University Of Agriculture And Applied Science. Thereafter, the judgments entered in the court below were appealed to this court, and on November 13, 1972, the matter was heard by this court.

During its regular session of 1969 the legislature adopted what is known as the Higher Education Act of 1969 with the purposes set forth in the Act as follows:

It is the purpose of this act to afford the people of the state of Utah a more efficient and more economical system of high quality public higher education through centralized direction and master planning providing for avoidance of unnecessary duplication within the system, for the systematic and orderly development of facilities and quality programs, for co-ordination and consolidation, and for systematic development of the role or roles of each institution within the system of higher education consistent with the historical heritage and tradition of each institution.

The purpose of this act is to vest in a single board the power to govern the state system of higher education and within the board's discretion to delegate certain powers to institutional councils.

The Board of Higher Education was vested with

. . . the control, management and supervision of the following institutions

of higher education in a manner consistent with the policy and purpose of this act and the specific powers and responsibilities granted to it: The University of Utah, located at Salt Lake City, Salt Lake County; Utah State University of Agriculture and Applied Science, located at Logan, Cache County; Weber State College, located at Ogden, Weber County; College of Southern Utah, located at Cedar City, Iron County; Dixie Junior College, located at St. George, Washington County; Snow College, located at Ephraim, Sanpete County; and the College of Eastern Utah, located at Price, Carbon County.

.    .    .    .    .    .

The court below entered a judgment declaring the Higher Education Act as unconstitutional and void in that it was in violation of the provisions of Article X, Sections 2 and 8. That part of Section 8 that must be dealt with here reads as follows:

The general control and supervision of the Public School System shall be vested in a State Board of Education the members of which shall be elected as provided by law.

What shall constitute the public schools system is defined by Section 2, which reads as follows:

The public schools system shall include kindergarten schools; common schools, consisting of primary and grammar grades; high schools, an agricultural college; a university; and such other schools as the Legislature may establish. The common schools shall be free. The other departments of the system shall be supported as provided by law.

Section 2 as adopted by the Constitutional Convention and prior to amendments adopted in 1906 and 1910 which resulted in the wording set forth above, reads as follows:

The Public School system shall include kindergarten schools; common schools, consisting of primary and grammar grades; high schools, an agricultural college; a university, and such other schools as the Legislature may establish. The common schools shall be free. The other departments of the system shall be supported as provided by law: Provided, That high schools may be maintained free in all cities of the first and second class now constituting school districts, and in such other cities and districts as may be designated by the legislature. But where the proportion of school monies apportioned or accruing to any city or district shall not be sufficient to maintain all the free schools in such city or district, the high schools shall be supported by local taxation.

It appears that Section 2 as originally adopted was designed to deal with the maintenance of the school system and the

designation of which of the schools should be free.

It is the plaintiff's contention in these proceedings that the statute creating the Board of Higher Education is in violation of the provisions of Section 8 of Article X of the Constitution. From the time of statehood until these proceedings were initiated the State Board of Education made no attempt to exercise control and supervision over post high school institutions except for the administration of certain junior colleges and technical schools, which from time to time have been placed under its jurisdiction by the legislature. Since statehood the legislature, from time to time, has specified the duties and responsibilities of the State Board of Education. But we do not find that the Board has ever been charged with the duty of assuming the control and supervision of the institutions of higher learning except as above mentioned. Until about the year 1918, the superintendent of public instruction as executive officer of the Board of Education in making his biennial reports did devote a section to higher institutions which at that time consisted of the University of Utah and the Agricultural College. However, since that time the reports have not dealt with those institutions. The statutes relating to the State Board of Education and its powers were first enacted in 1898 by a legislature which included many persons who served from the Constitutional Convention. It should be noted that these statutes omit any mention of higher education.

Since statehood the Constitution has been construed by the legislature as placing the control and supervision of public schools other than institutions of higher learning with the State Board of Education. This construction has been acquiesced in by the people for an equally long period of time and is a factor which we should have in mind in dealing with the problem of the validity of the statute we are here concerned with. It is a cardinal rule of constitutional construction that the instrument must be construed in the light of what was intended by its framers. The intended meaning must be ascertained from the whole of the instrument and in construing a particular section the court may refer to any other section or provision to ascertain its purpose and intention. While the language of Section 8 which states "the general control and supervision of the Public School System shall be vested in a State Board of Education," and the language of Section 2 which after dealing with the common schools states ". . . an agricultural college; a university, and such other schools as the Legislature may establish," when construed together, are in conflict, it would appear that the legislature being empowered to establish other schools would have the power to provide for their governance.

The provisions of Article X, Section 4, which deals with the University of Utah and the Agricultural College which are parties to these proceedings, have been dealt with by prior decisions of this court. This section reads as follows:

The location and establishment by existing laws of the University of Utah, and the Agricultural College are hereby confirmed, and all the rights, immunities, franchises and endowments heretofore granted or conferred, are hereby perpetuated unto said University and Agricultural College respectively.

The case of Spence v. Utah State Agricultural College [1] dealt with the status of that school and the case of University of Utah v. Board of Examiners [2] dealt with the status of the University of Utah. The effect of those decisions was to hold that the section of the Constitution above set forth confirmed the location and establishment of those institutions but that they remained subject to the control of the legislature.

The Higher Education Act of 1969 was before this court in the case of Rampton v. Barlow [3] wherein the constitutionality of Section 5(1) of the statute was challenged. The section of the act conferred upon the President of the Senate and the Speaker of the House the power to appoint certain members of the Board of Higher Educa-tion. That power was challenged by the plaintiff as being unconstitutional. It was the defendant's contention that the composition of the Board of Higher Education was such an integral part of the act that the entire act must fail and could not be saved by the severability clause contained therein. This court in dealing with the problem struck down the section above referred to, but because of the severability clause the court was careful not to declare the remaining portions of the statute invalid.

■ ■ In view of the long interpretation of Article X, Sections 2 and 8, by the legislature, with the acquiescence of the people,[4] as well as the State Board of Education, and the administrators of the institutions of higher learning, we are of the opinion that Chapter 48, Title 53, U.C.A. 1953, except that section before the court in the prior case above referred to, is valid. The decision of the court below is reversed and that court is directed to enter a judgment in accordance with this opinion. No costs awarded.

ELLETT, Justice (concurring in the result).

I concur in the holding that Chapter 138, Laws of Utah 1969, is not unconstitutional.

---

1. 119 Utah 104, 225 P.2d 18.

2. 4 Utah 2d 408, 295 P.2d 348.

3. 23 Utah 2d 383, 464 P.2d 378.

4. Bateman v. Board of Examiners, 7 Utah 2d 221, 322 P.2d 381.

'Our duty is to hold an act of the legislature valid if it is possible so to do.[1]

The legislature might enact an unconstitutional statute and the same not be challenged for many years. However, it is for the court to interpret the meaning of a constitutional provision as it applies to a legislative enactment when and only when it is presented for determination. The same decision should be made whether the question is raised early or late.

To ascribe a meaning to a provision of the Constitution based upon long acquiescence rather than on its plain language is to amend it in an unconstitutional manner.

I, therefore, do not concur in the last paragraph of the prevailing opinion insofar as it bases the constitutionality of the statute on long acquiescence. I prefer to limit the holding to say that insofar as the statute in question transfers to the State Board of Higher Education all of the powers heretofore vested by statute in the Boards of Regents of the various schools of higher education, it is constitutional. The authority of the various Boards of Regents was given by statute and, of course, that authority can by statute be taken away from them and given to another board, without conflicting with any constitutional provision.

1. Trade Commission v. Skaggs Drug Centers, Inc., 21 Utah 2d 431, 446 P.2d 958 (1968); Gubler v. Utah State Teachers' Retirement Board, 113 Utah 188, 192 P.2d 580 (1948).

The State Board of Education as set up by Article X, Sections 2 and 8, is still vested with the *general* control and supervision of the public school system. When and if a conflict of authority arises between the two boards, we will decide it, but we do not now need to decide matters which may never arise.

CROCKETT, Justice (concurring).

I concur in refusing to hold the Act unconstitutional in the posture in which this case is now presented, when no actual conflict has arisen, and indeed when it would seem there is not necessarily any justifiable apprehension that there will be.

The court in performing its separate function, and exercising proper judicial restraint therein, should not reach out to declare an act of the legislative branch unconstitutional. The presumption of constitutionality should be indulged; and a legislative act should not be declared otherwise unless the necessity is impelled because it appears clearly that there is irreconcilable conflict between the enactment and a superior constitutional mandate,[1] nor unless it is challenged by someone who has an interest which is infringed, or which is in hazard.[2] Conversely, if there is a reason-

1. See Newcomb v. Ogden City, etc., 121 Utah 503, 243 P.2d 941; Salt Lake City v. Perkins, 9 Utah 2d 317, 343 P.2d 1106.

2. State ex rel., University of Utah v. Candland, 36 Utah 406, 104 P. 285, 16 Am. Jur.2d, Constitutional Law, Sec. 119.

able basis to believe or assume that the purpose of the legislature can be carried out without such conflict with the Constitution, that should be allowed to be done. It is to be observed that the duties and prerogatives now given to the Board of Higher Education have in fact been carried out otherwise than by the State Board of Education for many years by the governing boards of the state's colleges and universities.[3] I quite agree that silence or inaction for however long a time would not result in nullifying a constitutional provision. However, where doubt or uncertainty may exist concerning a statute, the experience and actual operation in the area in question, and the apparent legislative intent, are factors which properly may be considered in determining its validity.[4]

In accordance with what I have said above, it is my opinion that there is a reasonable basis to believe and to assume that the Board of Higher Education can function as provided in the 1969 Act, without there arising any conflict with the State Board of Education, notwithstanding the necessity of an awareness of the constitutional provision in Article X, Section 8, that "The general control and supervision of the Public School System shall be vested in a State Board of Education the members of which shall be elected as provided by law."

HENRIOD, Justice (dissenting).

I respectfully dissent because: I believe the main opinion constitutes judicial legislation and represents the employment of an authority not reserved to the court. It has to do with what I consider to be immaterial facts and conclusions dissonant with legal precedent, history, tradition and constitutional judicial authority.

The Utah Constitution, in words whose clarity conceivably cannot be misunderstood or misconstrued, says that "The *general control and supervision* of the Public School System shall be vested in a State Board of Education *the members of which shall be elected* . . .,"[1] which System "shall include kindergarten schools; common schools, consisting of primary and grammar grades; high schools; *an agricultural college; a university; and such other schools* as the Legislature may establish. . . ."[2]

Such language obviously includes not only the *"agricultural college"* and *"a university"* but other schools listed in the act which is now to be declared constitutional. The above language is plenary and crystal clear. The only way it could or should be

---

3. E. g., the University of Utah by its Board of Regents, Sec. 53–31–7, U.C.A. 1953; Utah State University by its Board of Trustees, Sec. 53–32–9, U.C.A. 1953.

4. Rampton v. Barlow, 23 Utah 2d 383, 464 P.2d 378.

1. Article X, Section 8.

2. Article X, Section 2.

changed under established principles of constitutional law, is by a vote of the people,—not by a vote of the legislature. The main opinion ignores the principles that the Constitution is to be interpreted by the courts and not cremated by them. It declares the Constitution unconstitutional and the statute constitutional by some sort of interpretation and acquiescence by the legislature, the people and some administrators,—none of whom have any authority whatever to change the Constitution or any part thereof save at the ballot box. The reasons urged in the main opinion would rattle the teeth of Jefferson and the rest, and scorch the parchment of the Constitution itself.

The act which the opinion says is constitutional, says that *"the control, management and supervision"* of all schools, naming them, above the high school level, and all of which are conceded to be a part of the Public School System, is vested in the Board of Higher Education. To say that such language is not in conflict with Article X, Sections 2 and 8, which uses the same language except the word "management," which is either synonymous with or has an idem sonans connotation, or similar meaning, finds little comfort in logic, lexicography, etymology or the simplest kind of interpretation of clear, understandable, unambiguous words. It seems to me that the superficiality of arguing that the placing of "management" in between "control"

and "supervision," makes that which was supreme in an authoritative sense, now subservient, is apparent, and points up the jurisprudential intolerability, under our established rules, of lending any merit whatever to such argument. It seems to me that it is utterly unthinkable to permit a decimation of the clear, meaningful language of the Constitution, without, as a condition precedent, requiring such decimation by the orderly, established and mandatory process of majority rule at the polling place, else the democratic form of government, as we have known it, must subvert itself to legerdemainic judicial rhetoric that makes meaningless a document that many say was divinely inspired, and which most everybody believes means what it says.

The only reason assigned in the opinion for holding this act constitutional is that "In view of the *long interpretation* of Article X, Sections 2 and 8, *by the legislature, with the acquiescence of the people, as well as the State Board of Education, and the administrators of the institutions of higher learning,"* the statute is now constitutional. This, without the vote of the people who own the Constitution,—not the Legislature, neither of the Boards nor some administrators. The law of this case has never been, so far as I know, that espoused by any Utah case, and it is submitted that the case of Bateman v. Board of Examiners,—the only case cited in the main opinion for the

decision,—does not support the above quoted statement by the main opinion,—which will be the law of the case and of this state if that is the consensus of the majority of this court.

My learned colleague, Mr. Justice Ellett's concurrence in the result, in my opinion, sounds like a dissent. It disagrees with the last paragraph of the main opinion, which is the law of and the decision of this case, if published as such. Mr. Justice Ellett aptly points up the principle involved here, when he says "it is for the court to interpret the meaning of a constitutional provision as it applies to a legislative enactment when and only when it is presented for determination. The same decision should be made whether the question is raised early or late."

The issue here squarely has been put by both sides: Which agency has the superior authority of "control and supervision" of the schools mentioned in the act,—concededly a part of the Public School System,—the constitutionally authorized "elective" State Board of Education, or the legislatively created and "appointed" Board of Higher Education? At the expense of repetition, I suggest that under all principles, arguments and authorities urged by both sides, the lower court should be affirmed, and that such "control and supervision" should remain where it constitutionally is impacted, and that such control and supervision should be superior to the Higher Education Board, and that the latter, if the legislature wants to perpetuate it, should and must do it by a legislative enactment that specifically relates such superiority and subserviency.

I think this court should face up to the fact change for change's sake may be desirable to its proponents, but that it may be ever so unconstitutional,—which I think is the case here. This case is a people's case, not a legislature's case, nor an educator's case, nor a bureaucrat's case, and if the people are not allowed to vote for the drastic change envisioned here with respect to whether they have control or a lay committee, simply created by appointment and without permitting the right of suffrage to determine such power, this country will be in more trouble than that which already has been engendered by those who would deny that right of suffrage.

Mr. Justice Ellett's qualified concurrence in the result, is based on something with which I agree, but which is no issue here. I agree that the legislature can whittle away or take in toto the authority of Boards of Regents and Trustees, but I am unwilling to relate that power to say that in doing so, it can destroy a constitutionally created agency,—and this court should recognize its own fallibility if it condones the constitutionality in this case, since it can be the rapier that could sever one of the three main arteries keeping the heart of a democracy beating.

As to my learned colleague, Mr. Justice Crockett's concurrence, my reaction also constrains me to venture the suggestion that, even more than Mr. Justice Ellett's concurrence in the result, it is a meritorious, but eulogistic dissent in disguise, which, on analysis, really does not hide the personality of this litigation. I am led to wonder how the constitutional and elected State Board of Education members and their lawyers are going to interpret the first paragraph of the concurrence, particularly that part that says "no conflict has arisen" and there is no "justifiable apprehension that there will be." I am reasonably satisfied that if anyone presumes to quote the opinion as being the law of this case (which would seem to be impossible since four of the justices virtually have said the constitutional State Board of Education has power and authority superior to that of the State Board of Higher Education,—two by dissents, one by concurrence in the result, and one by an outright concurrence), that instead of clarifying the problem, which the legislature surely looks to this court to do in questionable legislation cases, it simply will confuse.

In my opinion the trial court actually has been affirmed, although this opinion goes out as a reversal. I think the problem of modifying, watering down, emasculating or substituting one agency with another, the question as to the State Board of Education's authority should be left to the decision of the people,—and that a denial thereof would be a mockery of the truism that that government is best where the people not only are least governed; but where such government is closest to them. (Emphasis added.)

CALLISTER, C. J., concurs in the dissenting opinion of HENRIOD, J.