480 P.2d 467

Joseph E. NELSON, Plaintiff,

v.

Clyde L. MILLER, as Secretary of State of
the State of Utah, Defendant.

No. 12258.

Supreme Court of Utah.

Jan. 25, 1971.

Anderson and Christoffersen, District
Judges concurred.

Callister, C. J., dissented and filed
opinion.

Henriod, J., dissented and filed opinion
in which Callister, C. J., concurred.

Tuckett, Ellett and Crockett, JJ., did
not participate.

Richard M. Taylor, Spanish Fork, Jackson B. Howard, Provo, Dennis F. Olsen, Paul H. Liapis, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Verl R. Topham, Blaine G. Davis, Asst. Attys. Gen., Salt Lake City, for defendant.

Harold R. Waldo, Salt Lake City, amicus curiae.

CROFT, District Judge:

This is a petition for a writ of mandamus filed in this court as an original proceeding pursuant to the provisions of Article VIII, Section 4 of the Constitution of Utah and Section 78–2–2, Utah Code Annotated 1953, which specifically provides that the Supreme Court shall have original jurisdiction to issue writs of mandamus and other extraordinary writs.

The facts are not in dispute, have been stipulated by the parties and may be summarized as follows:

The petitioner, Joseph E. Nelson, is a duly qualified, elected and acting judge of the Fourth Judicial District Court of the State of Utah. His present six-year term, to which he was duly elected in 1964, expires on January 4, 1971. On December 7, 1970, he became 74 years of age. On June 26, 1970, Judge Nelson presented to the defendant as Secretary of State a declaration of candidacy for the office of judge of the Fourth Judicial District Court and tendered his statutory filing fee of $50.00.[1] However, the defendant refused to accept the declaration of candidacy and filing fee presented by Judge Nelson because Judge Nelson was then over the age of 70 years, and, in the opinion of the Secretary of State, was therefore precluded from further eligibility for election to the

---

1. Section 20–1–7.7, U.C.A.1953 (as amended in 1969) provides that any incumbent judge of a district court who holds office pursuant to election and whose term of office expires in January next following a general election, may, if he desires to retain such office, file a declaration of candidacy with, and pay a filing fee of $50 to, the. secretary of state during the month of June prior to such general election. If he does so, any qualified member of the bar desiring to become a candidate for such office may also file such a declaration by 5:00 p. m. on the second Friday in July prior to such general election. If the incumbent judge does not file a declaration of candidacy, no member of the bar may file and the resulting vacancy is filled by gubernatorial appointment from three nominees selected by a judicial nominating commission.

office of district court judge because of the mandatory retirement provisions of the Judges' Retirement Act. Section 49–7–1.1 of that act (enacted by the Laws of 1969, Chapter 122, Section 1) had provided that:

A trial judge shall retire upon attaining the age of 70 years, and a Supreme Court judge shall retire upon attaining the age of 72 years; provided, however, any judge serving a term as judge on the effective date of this act,[2] who has attained the age of retirement, or attains that age during his present term shall retire on the completion of his present term.

Thereafter, on September 21, 1970, Judge Nelson filed a petition for a writ of mandamus in the Supreme Court praying that this Court issue such writ requiring the county clerks of the six counties within the Fourth Judicial District to place his name upon the ballot as a candidate for election as a district judge within that judicial district in accordance with Section 20–1–7.7 (5), U.C.A.1953, as amended.[3] In the alternative, the petition requested that the defendant be ordered to issue a certificate of election to Judge Nelson for which we believe he had no constitutional or statutory right. After the petition was filed, this Court then ordered the Secretary of State to accept Judge Nelson's declaration of candidacy and filing fee and to certify to the county clerks of the Fourth Judicial District the name of Judge Joseph E. Nelson to appear on the general election ballot for the November election, reserving for future determination after more studied consideration the issue as to whether or not the mandatory retirement provisions of Section 49–7–1.1 as set out above are constitutional.

Pursuant to that order Judge Nelson's name appeared upon the judicial ballot in the general election at which time the voters of the Fourth Judicial District were, in accordance with the provisions of Section 20–1–7.7(5), U.C.A.1953, as amended, given an opportunity to vote "yes" or "no" to the question of whether or not Judge Nelson "shall be retained" in the office of Judge of the District Court of that district.[4]

---

2. The act became effective on May 13, 1969, on which date Judge Nelson was then over 72 years of age.

3. That statute provides: "If no member of the bar has filed a declaration of candidacy for such office, then at the general election the ballots shall contain as to each justice of the Supreme Court or judge of a district court to be voted on in said county the following question: Shall (name of justice or judge) be retained in the office, of (name of office, such as 'Justice of the Supreme Court of Utah' or 'Judge of the District Court of the Third Judicial District')? Yes ( ) No ( )."

4. At the general election a majority of the voters in the Fourth Judicial District voting upon the judicial ballot voted "yes" to that question which, in the absence of the mandatory retirement provisions of the act, would have entitled Judge Nelson to another full six-year term as such district court judge.

We are now called upon to decide the constitutionality of Section 49–7–1.1 providing for the mandatory retirement of district court judges upon attaining the age of 70 years. If that statute is constitutional, Judge Nelson must retire at the end of his present term. If the statute is unconstitutional, Judge Nelson will be entitled to hold that office for a new six-year term beginning on the first Monday of January, 1971.

The sole question for our determination is the constitutionality of the mandatory retirement statute. In passing upon that issue we note that the defendant has stipulated that except for his age, Judge Nelson meets all the constitutional and statutory qualifications of the office of district court judge. Indeed, we record our concurrence with that stipulation, for we as judges and as members of the Utah State Bar are all cognizant of the many years of faithful service that Judge Nelson has rendered, and now continues to render, to the citizens of this state, and particularly to the people residing in the Fourth Judicial District as a district court judge. We are well aware that although the passing of time has added years to Judge Nelson's age, it has not detracted from his legal abilities or mental alertness. But neither those factors nor the results of the November balloting

in the Fourth Judicial District have any bearing upon the issue we are called upon to determine.

Under the Constitution of Utah each judge of the district court must be at least 25 years of age, an active member of the bar in good standing, learned in the law, a resident of the state for the three years next preceding his selection and a resident of his district.[5]

At the general election held November 5, 1968, the voters of the State of Utah amended the Constitution of Utah by adding Section 28 to Article VIII which reads as follows:

The Legislature may provide uniform standards for mandatory retirement and for removal of judges from office. Legislation implementing this section shall be applicable only to conduct occurring subsequent to the effective date of such legislation. Any determination requiring the retirement or removal of a judge from office shall be subject to review, as to both law and facts, by the Supreme Court.

This section is additional to, and cumulative with, the methods of removal of justices and judges provided in sections 11 and 27 of this Article.[6]

5. Article VIII, Section 5, Constitution of Utah.

6. Said Section 11 provides that judges may be removed from office by the concurrent

vote of both houses of the Legislature voting separately, provided two-thirds of the members of each house concur. Section 27 provides that any judicial officer

This constitutional amendment became effective on November 5, 1968, and the 1969 Legislature thereafter enacted into law Section 49–7–1.1 providing for the mandatory retirement of district court judges upon attaining the age of 70 years and of Supreme Court judges upon attaining the age of 72 years.[7]

The above quoted constitutional amendment clearly authorizes the Legislature to provide uniform standards for mandatory retirement of judges. Such standards are separate and distinct from standards to be established under that amendment for removal of judges. The challenged statute is a part of our state's Judges' Retirement Act which provides for retirement upon retirement pay.

In Boughton v. Price, Sec. of State, 70 Idaho 243, 215 P.2d 286, the Supreme Court of Idaho had before it a case similar to the case at bar. In that case the Legislature of Idaho had enacted a statute providing that no person shall be eligible to appointment or election to the office of supreme court justice or district court judge who shall have attained the age of 70 years at the beginning of the term to which he aspires. The constitutionality of that statute was challenged as containing an additional qualification for the office of district judge to those mentioned in the Idaho constitution.[8] However, in Boughton it is apparent that the Idaho constitution did not contain a provision authorizing the legislature to provide for the mandatory retirement of judges. Nevertheless, the Supreme Court of Idaho ruled that the challenged statute was constitutional, holding that the constitutional qualifications for the office of district judge were minimum qualifications and did not limit the power of the legislature to prescribe additional reasonable qualifications, and said that the fixing of the maximum age limit at 70 years did not appear unreasonable.

In the case before this court the petitioner has set forth five arguments by which he contends that Utah's mandatory retirement statute is unconstitutional. These may be summarized as follows:

(1) The only basis for mandatory retirement is the conduct of any given judge and age is relevant only to the extent it

---

who shall absent himself from the state or district for more than ninety consecutive days shall be deemed to have forfeited his office.

7. At the same time the Legislature enacted Section 49–7–8, U.C.A.1953, which prescribed procedures for removal of judges for willful misconduct, conviction of felony, persistent failure to perform duties, and habitual use of alcohol or drugs; and also enacted procedures for retirement for disability seriously interfering with the performance of duties.

8. The qualifications for the office of a district judge contained in the Idaho Constitution are similar to those contained in Article VIII, Section 5 of the Constitution of Utah as mentioned supra under footnote 5.

demonstrably affects the judicial conduct of a judge.

(2) The statute requiring retirement upon attaining the age of 70 years contravenes other constitutional provisions establishing qualifications for that office.

(3) The statute is in conflict with another provision of the Judges' Retirement Act, namely, Section 49–7–57, which provides that even after mandatory retirement a judge can be called back to serve either as a district judge or upon the Supreme Court.

(4) The statute violates the constitutional requirement that "uniform standards for mandatory retirement" be adopted in that a distinction is drawn between retirement of district court judges at 70 and supreme court justices at 72.

(5) The statute violates the Fourteenth Amendment to the Constitution of the United States prohibiting any state from enforcing any law abridging the "privilege" of citizens of the United States, asserting that holding an elective office is such a privilege; and also prohibiting the depriving of any person of property without "due process of law," again asserting the right to work is a property right.

In Trade Commission v. Skaggs Drug Centers, Inc., 21 Utah 2d 431, 446 P.2d 958, this court, in an opinion written by District Judge Joseph E. Nelson sitting as a member of the court, set forth legal principles which have long served as guidelines to courts in considering constitutional issues. This court therein said:

We have repeatedly held in order to be declared unconstitutional, the statute must clearly violate some constitutional provision, and further, the violation must be clear, complete and unmistakable.

In considering the question as to whether constitutional provisions are violated by a statute, the court said there are some fundamental principles we should keep in mind, setting them forth as follows:

The first is that the legislature of the state is not a government of powers limited to those expressly granted, as is the federal government, * * *. The legislature of the state, which represents the people and thus the sovereign, has all the residuum of power of government, except only as expressly restricted by the Constitution. In order to preserve the independence and the integrity of the three branches of government, it is of the utmost importance that the judicial exercise restraint and not intrude into the legislative prerogative. It cannot strike down and nullify a legislative enactment unless it is clearly and expressly prohibited by the Constitution or in violation of some plain mandate thereof. The court must make every reasonable presumption which favors constitutionality.

The courts have a duty to investigate and, insofar as possible, discover any reasonable avenues by which the statute can be upheld. Every reasonable doubt must be resolved in favor of the constitutionality of the statute. Those who assert the invalidity of the statute must bear the burden of showing it to be unconstitutional.

\*   \*   \*   \*   \*   \*

The court is not the conscience of the State or its people. It does not fall within its duty to express the personal desires or philosophy of its personnel.

\*   \*   \*   \*   \*   \*

The court must voluntarily restrain itself by holding strictly to an exercise and expression of its delegated or innate power to interpret and adjudicate. We have been called upon to state what the law is and not what we think it should be.

As to the plaintiff's first contention that the only basis for mandatory retirement is the conduct of any given judge, we find no merit to such contention. Mandatory retirement is not to be equated with removal for misconduct. A judge removed for statutory reasons gets no retirement benefits, whereas one retired for age or disability gets full retirement benefits.

In the verbalization of the dissenting opinion of Justice Henriod, whose loquacity is recognized as unsurpassable, we are taken to task for what he considers to be a "circumlocutious rape" of clear, unambiguous, meaningful and understandable English. He, with emphasis, points out that the constitutional amendment "in clear, understandable English," with no mention to age of retirement, interdicts and cautions that "Legislation *implementing* this section shall be applicable *only to conduct.*" (Emphasis his.) In doing so, he ignores the balance of the sentence in that constitutional amendment which states, in clear, unambiguous, meaningful and understandable English that the legislation implementing this section shall be applicable to conduct "occurring subsequent to the effective date of such legislation."

What this provision of this constitutional amendment means from this writer's point of view is that legislation implementing the establishment of uniform standards for mandatory retirement and for the removal of judges cannot apply to conduct occurring prior to such legislation. It certainly does not limit implementing legislation "only to conduct." At the time the Legislature enacted the mandatory retirement provisions of Section 49–7–1.1, it also enacted into law legislation fixing grounds and procedures for the removal of any judge of this state, as well as legislation relating to retirement for disability.[9] The retirement of a judge for "disability seriously interfering with the

9.  Section 49–7–8, U.C.A.1953, as amended by the Laws of 1969.

performance of his duties which is, or is likely to become, of a permanent character"[10] may well be the result of physical disability that has no relation whatsoever to "conduct," and to thus limit "implementing" legislation only to "conduct," as the learned justice would have us do, would exclude all retirement legislation not based upon conduct.

The Chief Justice in his dissenting opinion recognizes two possible interpretations of the second sentence of the constitutional amendment, preferring the interpretation that mandatory retirement standards refer to "conduct" caused by age or disability, and suggesting that if retirement be based solely upon age and without reference to conduct, the retirement legislation as to age might be retroactive while the legislation concerning conduct only must be prospective. While that may be so, we will not be confronted with a constitutional question based on that possibility, because the Legislature in enacting the mandatory age retirement statute specifically provided that this retirement legislation did not apply to judges who had reached or would reach the retirement age during their present term, and provided that they shall retire on the completion of their present term.[11] Even so, such a possibility does not justify limiting mandatory retirement to "conduct" matters only.

The Chief Justice considers that the third sentence of the constitutional amendment providing that "any determination requiring the retirement or removal of a judge from office shall be subject to review, as to both law and facts, by the Supreme Court" resolves the potential conflict created by the second sentence, because the review of a "determination requiring retirement" would be meaningless if retirement were determined solely by age. This presupposes that reaching 70 is a "determination" as that term is used in the constitution and that each uniform standard for mandatory retirement provided by the Legislature constitutes a "determination" subject to court review. We do not believe that the term "determination" should be so construed nor that "conduct" is the only constitutionally allowable basis for mandatory retirement. The "determinations" subject to court review are those of fact finding commissions established by the Legislature to consider the individual case of each judge, not the "uniform standards" provided by the Legislature.

The second contention of the petitioner—that the statute in question contravenes other constitutional provisions establishing qualifications for the office of a judge—was rejected by the Supreme Court of Idaho in Boughton v. Price, supra, and furthermore, the constitutional amendment itself authorizes mandatory retirement leg-

10. Section 49–7–8(d).

11. Section 49–7–1.1.

islation and in the society of today mandatory retirement has become a way of life. By today's standards retirement at 70 is not unreasonable.

In support of this contention that mandatory retirement at 70 years of age contravenes other constitutional provisions establishing qualifications for the office of district judge, petitioner cites the annotation in 34 A.L.R.2d at page 171, a part of which reads as follows:

It is quite generally considered that where the constitution lays down specific eligibility requirements for a particular constitutional office, the constitutional specification in that regard is exclusive and the legislature (*except where expressly authorized to do so*) has no power to require additional or different qualifications for such constitutional office. (Emphasis added.)

With regard thereto we note in passing that the Constitution of Utah "expressly" authorizes mandatory retirement legislation.

In his dissenting opinion Justice Henriod states that if the concurrences of the district court judges concurring in this majority opinion would have been the same had the legislature set the retirement age at 45, our judicial tenure would have been short-lived. Be that as it may, if such were the law we trust that in considering its constitutionality we would at least give consideration to the long-established principles of constitutional construction that courts may inquire as to whether legislation is arbitrary or capricious and whether it has a reasonable relation to a legitimate end.[12] As already noted, we believe retirement at 70 is not unreasonable.

In stating as we do that in today's society retirement has become a way of life, we do not contend, as the dissent suggests, that such a philosophy is "infallible." However, we would recognize as "infallible" the right of the people of this state to amend its own constitution. The dissent suggests that if retirement is a way of life, this court should hasten to recommend to the legislature that it pursue the same course and enact legislation to prohibit any elected official from holding office or running for election who has attained a particular age. Should the citizens of Utah choose to provide by constitutional amendment that the Legislature could provide uniform standards for mandatory retirement of its own members and other elected officials, we would assume it could do so. If, in doing so, the people of this state also provided, as they have done for justices and judges,[13] that the selection of legislators and other public officials shall be based solely upon consideration of fitness for office, without

12. 16 Am.Jur.2d 370, Sec. 161—Constitutional Law.

13. Article VIII, Sec. 3, Constitution of Utah.

regard to any partisan political considerations, that their terms of office might be for six or ten years as the case may be; that certain advantages be accorded them on a nonjudicial ballot, resulting, as a practical matter, in lifetime tenure in office, with full retirement benefits at the age of 70, it is doubtful that mandatory retirement at that age would seem so repulsive to such public officials. As judges, we naturally support the nonpolitical selection of judges as now provided in the constitution as being in the best interests of better judicial administration for the people of this state. Under these circumstances, in accepting such benefits bestowed upon judges by the constitution and its implementing legislation, we find the glue of which the dissent speaks is not as sticky as the learned justice would have us believe.

The dissent suggests that had the framers of the constitutional amendment intended it, they "could have put 70 therein." By the same line of reasoning, it can be said that they could have set forth all other "uniform standards" for mandatory retirement which they intended in their own minds to have established. They did not do so. Instead, they followed the pattern established by the original framers of the Constitution of Utah who, in Article VIII relating to the Judicial Department of State government, provided for implementing legislation by the Legislature with respect to that Judicial Department in at least the following particulars:

(1) To establish other courts inferior to the Supreme Court.[14]

(2) To increase or decrease the number of Supreme Court judges from the five established by the Constitution.[15]

(3) To establish the terms for which and the manner in which supreme court and district court judges shall be selected under constitutional guidelines,[16] and to extend the terms of office of such judges.[17]

(4) To provide for the number of times a district court shall be held at the county seat in each county, and for a change of venue therefrom.[18]

(5) To change the limits of any judicial district or to increase or decrease the number of judges thereof.[19]

(6) To restrict matters civil and criminal over which the District Court would have original jurisdiction.[20]

(7) To determine the number of justices of the peace to be elected, to fix their powers, duties and compensation and to restrict their jurisdiction.[21]

14. Section 1.
15. Section 2.
16. Section 3.
17. Section 24.

18. Section 5.
19. Section 6.
20. Section 7.
21. Section 8.

(8) To regulate appeals from the district court to the supreme court from all final judgments and with regards to probate and guardianship matters and to limit and restrict appeals to the district court from justice of the peace courts.[22]

(9) To prescribe the powers and duties of county attorneys and of such other attorneys for the state as the legislature may provide.[23]

(10) To remove judges from office by the concurrent vote of two-thirds of the members of each house.[24]

(11) To fix compensation of judges.[25]

With these constitutional powers of the Legislature over the Judicial Department, in existence now for 75 years without seeming abuse, it hardly seems fair to say, as does the dissent, that this decision knifes away the independence of the judiciary. This court has heretofore said:

So much has been said and written about the powers belonging to the three departments of government that it would be trite to attempt to restate them. It will be enough to say that the legislative branch should make the law, the judicial branch should be confined to interpreting it and all other power must of necessity be vested in the executive branch, which is charged with the enforcement of the law * * *.[26]

The dissent suggests that our tri-partite government system and the philosophy of independence of the three branches are destroyed in part by the decision in this case. The philosophy of independence is not so autonomous in its nature as the dissent implies. The system itself has its own controls. The executive proposes legislation, the legislature enacts it and the judiciary voids it. The legislature acts and the executive vetoes. The judges interpret the law, the legislature changes it. The constitution controls all branches and the people change it, the latest change of which was an affirmative vote by 81% of the people of this state giving constitutional authorization for the legislature to provide uniform standards for mandatory retirement of judges. To now rule as the dissent would have us rule would instead destroy in part the independence of the people of this state to amend their own constitution.

The dissent laments the lack of a more discerning and critical examination of the "clear language of the amendment." After reading it, I have chosen to supplement my original draft, not only in an effort to respond to that criticism, but also because it is my belief that the comments contained therein justify a response as few, if any, dissenting opinions from this court have ever done. The sarcasms thereof, en-

22. Section 9.
23. Section 10.
24. Section 11.
25. Section 12 and Section 20.
26. Rampton v. Barlow, 23 Utah 2d 383, 464 P.2d 378.

hanced by the author's extraordinary vocabulary, are the more evident by its author's failure to consider constitutional principles of law. It is regrettable that the learned justice would go so far as to suggest that the judges concurring in this opinion are motivated in the decision reached herein by our "disposition to become beholden to the legislative and executive branches." This is neither justified in fact, nor judicial in principle. We hold as we do because we are clearly of the opinion that the constitutional amendment authorizes the legislature to do what it did do, and although we as individual judges may like to see a law that would permit us to sit as judges for as long as our physical and mental capacities would permit us to do so, we agree with Judge Nelson in his opinion in Trade Commission v. Skaggs Drug Centers, supra, that it does not fall within the duty of this court to decide cases based upon the personal desires or philosophy of its personnel.

The dissent suggests also that had the present justices of this court sat to consider this case in lieu of the district court judges called by the Chief Justice to sit in their stead, the decision in this case may well have gone the other way. Such an "if" could well be said of all of the decisions of this court. We neither solicited nor ask for this assignment, nor do we seek to avoid either the constitutional duty we have to sit in this court, when called to do so by the Chief Justice or the privilege that we deem is ours in doing so. Our personal feelings of loyalty and respect for our colleague, Judge Nelson, can play no part in our thinking, nor do we choose to avoid our responsibility by saying, as the dissent would do, that the voters of the Fourth Judicial District have spoken and we abide thereby, irrespective of the constitutional amendment, the statute here under consideration, and the people of this state who so overwhelmingly voted to so amend the constitution.

With regards to the remaining contentions of the petitioner, and as to the third claim that Section 49–7–1.1 is in conflict with Section 49–7–5.7, we see no constitutional conflict between mandatory retirement for age and legislative authorization for calling a judge back into service from retirement upon a "case-to-case" basis, as provided in Section 49–7–5.7. Article VIII, Section 6, of the Constitution of Utah provides that the legislature may increase or decrease the number of judges of any judicial district. Furthermore, under Utah law, upon written stipulation of the parties or their attorneys of record, a member of the bar who has never been appointed or elected to the office of a judge may sit as a judge pro tempore in the district court.[27] Statutes authorizing the recall of retired

27. Sections 78–3–15 and 16, U.C.A.1953.

judges back into service when needed have been upheld by the Supreme Courts of Washington and California in State ex rel. New Washington Oyster Co. v. Meakim, et al., 34 Wash.2d 131, 208 P.2d 628 (Wash. 1949), and in Pickens v. Johnson, 42 Cal.2d 399, 267 P.2d 801 (Cal.1954). Thus, the services of a retired judge who is still mentally and physically alert remain available to the people of this state when needed and the potential loss of a "Holmes" or a "Pound" is minimized.

As to the fourth and fifth contentions of the petitioner that the statute violates the constitutional provision for "uniform standards for mandatory retirement" and the Fourteenth Amendment to the Constitution of the United States, it is generally recognized that where the constitution so provides, laws of a general nature must have a uniform operation. Such a provision does not prevent reasonable classification by the legislature, nor does it require that statutes be universal in their result. The constitutional requirement is satisfied if the statute applies uniformly within a class of persons based upon a reasonable distinction.[28] Our own constitution provides that Supreme Court judges must be over 30 years of age, while district court judges may be 25;[29] and that our governor must be 30, while the attorney general may be 25.[30] The Constitution of the United States provides that the president must be at least 35 years of age and a natural born citizen,[31] a senator must be at least 30 years and a citizen for nine years, while a representative must be at least 25 and a citizen for seven years;[32] and that qualifications of voters shall be as fixed by the various legislatures of the states.[33] We see no unreasonable or arbitrary classification in the mandatory retirement statute as between Supreme Court and District Court judges and conclude that the statute in question does not violate the constitutional requirement of "uniform standards for mandatory retirement."

Likewise, since our federal and state constitutions both use different ages in fixing qualifications to elective office in congress and our state courts, it seems clear to us that an age for mandatory retirement for judges does not abridge the "privileges" of the citizens of this state in violation of the Fourteenth Amendment to the Constitution of the United States, particularly where, as here, our own state constitution grants the power to so provide to the legislature. Nor can we conceive in the light of nationwide

28. 82 C.J.S. Statutes § 154.

29. Article VIII, Sections 2 and 5, Constitution of Utah.

30. Article VII, Section 3, Constitution of Utah.

31. Article II, Section 1, Constitution of United States.

32. Article I, Sections 2 and 3, Constitution of United States.

33. Article XVII, Amendment, Constitution of United States.

existing retirement legislation, that fixing a mandatory retirement age for judges is a taking of property without "due process" as alleged by petitioner.

It is therefore our conclusion that Section 49–7–1.1, U.C.A.1953, as enacted in 1969, providing for the mandatory retirement of judges is not unconstitutional, that Judge Joseph E. Nelson is not entitled to assume the office of district court judge in the Fourth Judicial District, and that a writ of mandamus requiring the Secretary of State to certify his election should be denied. It is so ordered.

ANDERSON and CHRISTOFFERSEN, District Judges, concur.

TUCKETT, ELLETT and CROCKETT, JJ., having disqualified themselves, do not participate herein.

CALLISTER, Chief Justice (dissenting).

I agree with the views expressed by Justice Henriod, but wish to proffer these additional comments.

The only conceivable way to sustain the majority opinion is to segment the amendment into its separate sentences and arbitrarily refuse to construe them together, in spite of the references of one sentence to another.

Section 28 of Article VIII provides:

The Legislature may provide uniform standards for mandatory retirement and for removal of judges from office. Legislation implementing this section shall be applicable only to *conduct* occurring subsequent to the effective date of such legislation. Any *determination requiring* the *retirement or removal* of a judge from office shall be subject to review, as to both law and facts, by the Supreme Court.

This section is additional to, and cumulative with, the methods of removal of justices and judges provided in sections 11 and 27 of this Article. [Emphasis added.]

I agree with the majority that the amendment confers upon the Legislature the power to provide uniform standards for mandatory retirement and removal of judges. I further agree that mandatory retirement cannot be equated with removal for misconduct. However, the conclusion of the majority that the amendment permits the legislature to set a standard based on age and without reference to conduct is inconsistent with the language of the amendment. It should be conceded that if the first sentence constituted the entire amendment, there would be a basis to support the construction advocated by the majority. However, the second sentence of the amendment specifies that the implementing legislation shall be applicable to *conduct* occurring subsequent to the effective date of such legislation. There are two alternative interpretations of this sentence. The mandatory retirement standards refer to *conduct* caused by age or disability

as advocated by this dissent; or the distinction urged by the majority that the standards of mandatory retirement may be based solely on age and without reference to conduct, in which case the retirement legislation might be retroactive while the legislation concerning conduct only must be prospective. The third sentence resolves this potential conflict, i. e., it provides that any determination requiring the *retirement or removal* of a judge from office shall be subject to review by this court both as to law and facts. This review of a *determination requiring retirement* would be meaningless if retirement were determined solely by age. The words *"any determination requiring the retirement"* must mean some type of proceeding in which the conduct of an individual is reviewed to determine whether it comports with the standards provided by the legislature.

I am compelled to construe Section 28 as follows:

The legislature is empowered to enact prospectively uniform standards of conduct for the removal or retirement of judges, but in a proceeding where there is a determination requiring the retirement or removal of a judge from office, he is entitled to a review of both the law and the facts before the Supreme Court.

Section 49–7–1.1, U.C.A.1953, as enacted in 1969, provides for mandatory retirement of judges based solely on age and without reference to conduct. These standards do not comport with the provisions of Section 28, Article VIII of the Constitution of Utah and are therefore unconstitutional. The writ of mandamus requiring the Secretary of State to certify plaintiff's election should be granted.

HENRIOD, Justice (dissenting).

While dissenting as to the construction of the subject legislation, I am not adverse to retirement programs generally. I simply cannot go along with the majority's conclusion that such legislation empowers severance at 70 of the tenure of a judge whose capabilities, according thereto, are of such sterling quality. Some of our best legal talent, representing this Judge, do not share the easy and simple solution of the majority. I believe the simple language of the amendment does not warrant any delegation of power so comprehensive as that sanctioned by this decision, by one branch of government over another, nor does it merit the cacophonic interpretation of something that isn't there.

This case is somewhat unique, where three of the five members of this court, for different, but legitimate reasons deemed participation herein inadvisable. Had they been qualified to act, this case well may have gone, guesswise, the other way. However, my learned colleagues of the District Court have given of their time and talents unitedly in the conclusion of his case. If their concurrence would have been the

same had the legislature set the retirement date at 45, the judicial tenure of each would have been very shortlived, demanding his return to private practice that may not be there any more, which points up the possibilities here.

This case also points up basic problems in our tri-partite governmental system, checks and balances anent thereto and the philosophy of independence of the three branches of government we learned about at an early age, a part of which this case destroys.

Personally I suppose I should care less about this decision, since it will affect me not at all tenure-wise or otherwise,—perhaps the only one here so positioned. I would have preferred a more discerning and critical examination of the clear language of the amendment that I believe justified, and correctly so, a certain degree of protection for the members of the Bar and the judiciary against their own knockout drops and their disposition to become beholden to the legislative and executive branches. Whittling away the independence of the judiciary with the knife of this decision, in my opinion, downgrades its members, waters down its power and dignity, and debilitates it to the point of foreseeable impotence. I hope the scriveners of it will not be its regretters.

The main opinion indulges some disarming peripatetics in an ipse dixit interpretation of the amendment that has no minikin referring to any legislative authority to fix the age of retirement any more than it does to the price of butter. Had its framers intended it (which mayhap they did with tongue in cheek) they could have put 70 therein and this case then may not have been necessary (in which event I think it would have been defeated), or they could have delegated that chore of date fixing to the legislature (in which event I think its defeat also would have been accomplished). The amendment did neither, which to me is highly significant. With an assumptive conclusion this court has elected itself as amanuensis in recording that the amendment said something that it said not at all. The opinion here reads into that amendment the lilting but wilting gratuity that "In the society of today mandatory retirement has become a way of life." If there be any genuine conviction in that pronouncement, this court should hasten to recommend to the legislature that it pursue the same course to enact legislation prohibiting any elected public official from holding office or running for election who has attained the age of, say, 50, 60 or 70, whichever it chooses, for reasons of senility born of legislative fiat.

The quotation mentioned above apparently paraphrases Point III of defendant's brief, that "When the voters * * * approved the constitutional amendment, *they believed* that it was a provision to mandatorily retire judges from office *upon the attainment of a given age.*" What a falla-

cious tribute to the omniscience of the voters in analyzing an amendment about which the lawyers in this case, and the judges in this case themselves cannot agree, in which amendment nothing was said about age, much less the attainment of it! The true electorate analysis seems to have been found, not in the rhetoric or assumptions of counsel for Mr. Miller, but in the whopping 80% majority vote cast for Judge Nelson in the Fourth Judicial District,—a specific, practical and emphatic negation by the voters of what defendant's counsel said they intended. Their vote seems to be the most living testimonial to the effect that neither did they read the amendment the way the legislature did, nor the way this court now has interpreted it, but that on the contrary they did *not* intend that the legislature should be allowed to eliminate a highly competent choice of the constituency in his community, and did *not* intend that this court or anyone else should tell them what was in the recesses of their minds, and no reason is apparent that this was not reflective of the attitude of voters elsewhere.

I think the main opinion's dogma about retirement being a way of life is glued to the roof of its mouth, irrespective of the main opinion's remark that it is not as "sticky" as supposed. If such philosophy be infallible, it should find its bourn in the legislative halls, the Governor's Office, the Treasurer's Office, the Auditor's Office, the Secretary of State's Office and the Attorney General's Office,—in either of which, under the constitution and laws of this State, octogenarians or nonagenarians,—who may be as senile, I think as judges,—are perfectly free to impose their senility on the body politic,—but not judges, the only elected, or presumably elected public officials singled out for pasteurization or pasturization. Had the decision in this case been the law of the land a few years back, the gems of wisdom and truth of Oliver Wendell Holmes never would have found their way to the galley proofs of history, and the international impact of Roscoe Pound on the Bench and Bar would have been lost to history in the superficial printer's ink pronouncing an artificial and unrealistic senility by legislative fiat.

The amendment which 49-7-1.1 is claimed to implement, in clear, understandable English, without any reference of any kind with respect to age of retirement, interdicts and cautions that "Legislation *implementing* this section *shall* be applicable *only* to *conduct.*" I repeat, "applicable *only* to *conduct.*"

The main opinion, with the suavity of a sequestered brook, as to the urgence that this language means what it says, simply but with little substance or documentation, says "There is no merit to such contention." Its reason: "Mandatory retirement is not to be equated with removal for misconduct." No one said otherwise. It is not a question of equating anything with anything else,—

it is a matter of interpreting clear, unambiguous, meaningful and understandable English, and there is no justification for what I think is a circumlocutious rape of the body of English language.

By no stretch of one's imagination can attaining the age of 70 be construed to be the conduct of a judge because of that fact. All this age bit has to do with *conduct*, relates, if at all, back to the good conduct or misconduct of a couple of people three and a half score years before, with the assistance of a cell or two. The opinion's reasoning is not warranted lexically, and appears to be a gratuitous non sequitur.

The amendment's other language negates the gist of this decision. It provides for a review by this court "as to both law and facts." If the main opinion will not tamper with that provision, and refrain from saying that there is no merit to the urgence that it means what it says, it would seem that this case becomes infected with some sort of juridical ridiculosity, because if the age of the judge is the only basis for retirement, and that fact is reviewable by this court, it would seem to be somewhat puerile for five grown men to don black robes and call for an "Oyez," only to appear quite silly in examining a birth certificate or one's varicose veins. Besides, the plain language leaves the entire matter of mandatory retirement up to the Supreme Court, not the Legislature. If the deserved praise so justly heaped upon Judge Nelson in the main opinion is not something other than faint, this court should sustain him in his election based on those laudatory facts, stipulated to, by both sides of this case and by all their lawyers, based on the law which I think is so clearly expressed, and upon the facts as provided for review on Sec. 28, Art. VIII, Constitution of Utah. That praise lost its resonance later in the main opinion by a lengthy lift-out of an opinion written by Judge Nelson which seems to serve no useful purpose save to discredit the position he takes in this case.

I appreciate profoundly the kudo for loquacity bestowed upon me by my learned colleague of the majority, but must remark that this opinion loquaciouswise, is comparable and as unsurpassed as this dissent, and quite as rattly,—so I return it to him for placement wherever he is wont to place kudoes.

Reference was made to 49–7–8, U.C.A. 1953 (1969 Pocket Supp. 190) in support of the main opinion. In passing I simply comment that I have gone on record in an April 28, 1970, minute entry, as questioning that section's constitutionality after Rampton v. Barlow, 23 Utah 2d 383, 464 P.2d 378 (1970).

The author of the main opinion takes me to task, and perhaps rightly so, for language used that seemed offensive. I have deleted or rephrased a few sequences here and there, but feel so strongly about my position that I cannot hope to please those whose

views are antithetical with the most soft-spoken of words. I am sure, however, that my friend is dead wrong and quite as sarcastic when he says that I failed to consider constitutional principles of law. That is the unkindest cut of all. What I failed to consider was the constitutional sensibilities of my worthy opponent in this quite debatable debate.

CALLISTER, C. J., concurs in the views expressed by Mr. Justice HENRIOD also.

TUCKETT, ELLETT and CROCKETT, JJ., having disqualified themselves, do not participate herein.

Ellett, J., filed dissenting opinion in which Crockett, J., concurred.