Scott M. MATHESON, Governor of the State of Utah, Plaintiff and Respondent,

v.

David S. MONSON, Lt. Governor and Secretary of State of Utah, W. Sterling Evans, Clerk of Salt Lake County, State of Utah, Dennis D. Ewing, Clerk of Tooele County, Reed D. Pace, Clerk of Summit County, and Homer F. Wilkinson, an Individual, Defendants and Appellants.

No. 16078.

Supreme Court of Utah.

Nov. 24, 1978.

Richard J. Carling and Kent Shearer, David L. Wilkinson, Asst. Atty. Gen., James B. Lee and James M. Elegante, Salt Lake City, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

**MAUGHAN, Justice:**

In this action we are asked to determine the validity and effect of Section 20–1–7.-7(6)(2) of the Utah Code Annotated, which provides in relevant part:

> (6) In cases where one or more members of the bar have filed a declaration of candidacy against a justice or judge who has filed a declaration of candidacy, then
>
> . . .
>
> \*   \*   \*   \*   \*   \*
>
> (2) if one or more candidates die, resign or become disqualified prior to the general election leaving only one candidate remaining, such candidate shall be issued a certificate of election to serve until the next general election at which time such candidate shall, if he desires to retain such office, file and run for the unexpired term of such office in the manner provided in this section . . .

The district court declared 20–1–7.7(6)(2) unconstitutional, enjoined the Salt Lake, Tooele and Summit County Clerks from placing Homer F. Wilkinson's name on the election ballot, enjoined defendant Monson from issuing a certificate of election to Wilkinson, and declared that a vacancy exists in the office of Third District Judge, which should be filled by appointment of the Governor pursuant to 20–1–7.1. We affirm in part and reverse in part. All statutory references are to Utah Code Annotated, 1953 as amended.

The facts giving rise to this proceeding are as follows: Pursuant to 20–1–7.7(2), incumbent Third District Judge Marcellus K. Snow filed a declaration of candidacy seeking re-election to his office for an additional six year term. Thereafter, Homer F. Wilkinson filed a declaration of candidacy against Judge Snow, pursuant to 20–1–7.-7(3). After the period for filing had elapsed, Judge Snow died, leaving Mr. Wilkinson as the only candidate. Governor Scott M. Matheson, whose duty it is to appoint persons to fill judicial vacancies, brought this action for declaratory relief. It is his position the above-quoted provision is unconstitutional under Article VIII, Section 3 of the Constitution of Utah, which is as follows:

> Judges of the Supreme Court and district courts shall be selected for such terms and in such manner as shall be provided by law, provided, however, that selection shall be based solely upon consideration of fitness of office without regard to any partisan political considerations and free from influence of any person whomsoever, and provided further that the method of electing such judges in effect when this amendment is adopted shall be followed until changed by law.

The above section of the Constitution was adopted as an amendment in 1945. It clearly distinguishes two methods by which one can become a judge, viz., selection and election.

The purpose of the amendment is twofold: first, it requires the removal of partisan politics from any selection method adopted, demanding instead that the sole consideration be "fitness for office," and second, it insures a method of election be retained "until changed by law." There is no doubt the Legislature is empowered under the amendment to enact laws providing orderly steps to judicial office under both methods.

In 1967, the Legislature provided just such steps by enacting 20–1–7.1 through

20–1–7.9. This act created judicial nominating commissions which facilitate the non-partisan selection of judges by selecting three persons based upon "fitness for office," and recommending their names to the governor. One of these three persons is then appointed by the governor as judge. In addition, the act continues to provide a method of election, by allowing a qualified member of the bar to file a declaration of candidacy against an incumbent judge whose term is about to expire. If no one files against such an incumbent, his name appears on the ballot for a yes-no vote.

20–1–7.7(6)(2) states if one or more candidates die, resign, or become disqualified before the election, leaving only one candidate, that person *shall be issued a certificate of election.* The person must then file his candidacy and run for the unexpired term of the office at the next general election, unless the person is the incumbent judge holding office pursuant to election, in which case the certificate of election is for the term of office.

■■■ The Legislature is clearly and expressly empowered by Article VIII, Section 3 of the Constitution to modify the method of electing judges in effect when the amendment was adopted; viewed in this light, 20–1–7.7(6)(2) is a legitimate statutory provision focusing upon a possible albeit rare contingency in the process of electing judges. We perceive 20–1–7.7(6)(2) to mean that, upon the death, resignation or disqualification of a candidate, leaving only one candidate eligible for the office, that candidate shall forthwith be issued a certificate of election, and shall be sworn in as the judge. This provision is, in our minds, a logical and constitutionally proper method to avoid a hiatus in the law which would otherwise occur. If such a candidate had to stand for election, there would be a period, lasting perhaps up to six months, in which there would be no functioning judge. On the other hand, if a judge were selected through the judicial nominating commission, one who had filed and intended to run for office would be unfairly deprived of the opportunity simply by the untimely death

of his opponent. By providing for the immediate issuance of the certificate to the lone candidate, the Legislature has avoided both problems in a manner not in conflict with our Constitution. The person so installed as judge is still subject to the election process because he must file and run for office at the next general election, where he must face either an opponent or a yes-no vote.

■■■ We hold that 20–1–7.7(6)(2) is constitutional, it being part of a statutory scheme logically providing for a method of electing judges under the express authority of Art. VIII, Sec. 3 of the Constitution of Utah. The district court was correct in prohibiting the placement of Mr. Wilkinson's name on the election ballot. In all other aspects, the court is reversed, and the Lieutenant Governor is ordered to issue a certificate of election to Homer F. Wilkinson.

CROCKETT, Justice (concurring with comments):

The problem confronted here involves the validity of the law under which most of the presently serving judiciary of our state has been selected and/or elected. Each of the Justices of this Court presents his views thereon. Inasmuch as my analysis and rationale is somewhat different from that of my colleagues, I likewise present my views.

The purpose of the 1944 amendment to Article VIII, Sec. 3 of our Constitution was to provide a foundation for a change from the previous method of choosing judges. In doing so it stated two main objectives, which are interrelated, but which can also be looked at separately. The main objective was to provide for a non-partisan method, as reflected in the language that the selection shall be "without regard to any partisan political considerations"; and the other was that the "selection shall be based solely upon consideration of fitness for office."

As noted in the other opinions, it is not open to question that the main objective, that of creating a non-partisan judiciary, has been achieved in each of the legislative

enactments implementing that constitutional amendment since its adoption.[1] The matter of critical concern is whether the method of choosing a judge as provided in Sec. 20–1–7 sufficiently meets the second mandate that: the selection shall be based solely upon consideration of fitness for the office. The views of our dissenting colleagues pointedly indicate that this is the aspect of the law in which there is possible vulnerability; and concerning which it perhaps should be recognized that reasonable minds may differ. I therefore acknowledge that the question raised deserves forthright and logical treatment.

In addition to what has been said by my colleagues, I think there are further observations that have a legitimate bearing on the question whether the procedure set forth in Sec. 20–1–7 complies with the requirement that the selection of the judge shall be based solely upon consideration of fitness for the office, or whether it so wholly fails in that objective that it must be declared unconstitutional.

The most important of these additional observations is that our constitution itself sets forth the qualifications for the office of District Judge. Article VIII, Sec. 5, states:

. . . Each judge of a district court shall be at least twenty-five years of age, an active member of the bar in good standing, learned in the law, a resident of the state of Utah three years next preceding his selection, and shall reside in the district for which he shall be selected.

It is not entirely without reason to argue that inasmuch as the constitution thus prescribes the qualifications, no further refinements thereon are necessary or justified; and that if a candidate meets those requirements he should be deemed to be qualified for that office. To be considered in connection with that thought is the fact that in order to become "an active member of the bar in good standing" a person must have been investigated as to his integrity and moral character, and examined as to his learning in the law.

Coupled with the foregoing is the fact that the candidate must run for the office at the earliest opportunity, i. e., at the next general election, and thus have public approval, which is an additional assurance of selection on the basis of fitness for office. In that regard, it should be observed that defendant Wilkinson's position was that his name should be placed on the November 7th ballot for public approval or disapproval of his selection to the judiciary; and that if so approved, he would be sworn in January 1, 1979. I think that position was correct because, although not expressly so stated in the statute, this procedure would comport with the objective: that the selection of judges should be on the basis of fitness for office.

Even though this case involves the validity and operation of the statute referred to as it affects the judiciary generally, the rights of defendant Homer Wilkinson himself should not be lost sight of entirely. As a member of the Bar in good standing, he had the right to assume that he had the qualifications to file and run for the office of District Judge. It seems manifestly unfair that some totally unexpected and fortuitous event should so operate as to deprive him of that opportunity.

My final observation is that all of what has been said in this and other opinions in this matter should be considered in the light of certain fundamental propositions relating to consideration of the constitutionality of statutes. The legislature of a sovereign state has all powers of government, including that of providing methods for election of public officers, except only as expressly limited by the state constitution;[2] and the courts should exercise restraint in intruding into the legislative prerogative.[3] Correlated to the foregoing is another foundational principle: that legislative enactments carry a strong presumption of constitutionality

---

1. S.L.U.1951, ch. 38; 1963, ch. 33; 1967, ch. 35; and 1971, ch. 32.

2. *Wood v. Budge*, 13 Utah 2d 359, 374 P.2d 515.

3. *Heathman v. Giles*, 13 Utah 2d 368, 374 P.2d 839.

and the court should not declare otherwise unless the necessity is impelled because it appears clearly that there is irreconcilable conflict between the enactment and some constitutional mandate.[4]

On the basis of what has been said above, I agree that the judicial selection act should not be declared unconstitutional; and it is my opinion that the defendant Homer F. Wilkinson is entitled to be certified as a District Judge to serve until the next general election.

WILKINS, Justice (concurring with comments):

I concur with the opinion of Mr. Justice Maughan and add these comments.

Art. VIII, Section 3 of the Constitution of Utah must be interpreted, in my opinion, on the basis of a recognition that its basic and overwhelming purpose was to establish a non-partisan judiciary. I note and acknowledge that there is some force in the comments of both Mr. Chief Justice Ellett and Mr. Justice Hall. There are indeed some disheveling aspects to this constitutional provision and its statutory progeny, but these aspects do not compel the conclusions reached, I believe, in either of their opinions. We must infuse a practical interpretation to our pertinent constitutional provision " . . . so that the . . . purpose of those who created [it] may be carried out".[1]

If, as noted, the purpose of Art. VIII, Sec. 3 was to establish a non-partisan judiciary, then statutory provisions not inimical to non-partisanship must be presumed valid. I agree with Mr. Justice Hall's comment that "The fact that the voters may elect a judge is not to be taken as less than a 'selection' as is required by the Constitution". I believe however that Sec. 20–1–7.-7(6)(2), Utah Code Ann., 1953, as amended, requiring issuance of a certificate of election to the remaining candidate where the

other candidate dies, resigns, or becomes disqualified, is not inconsistent with the non-partisan mandate of Art. VIII, Sec. 3 (which I repeat is its basic purpose) even though the result is a "selection by default" rather than a selection "based solely on fitness for office." Sec. 20–1–7.7(6)(2) creates some tension between itself and this constitutional provision. However, that tension is not fatal and is assuaged by the fact that a judge so obtaining his office must, at the next general election, file and run for office and his fitness for office may then be subjected to the scrutiny of the electorate.

ELLETT, Chief Justice (dissenting):

Judge Marcellus K. Snow, incumbent, announced for re-election for a six year term as district judge. Homer F. Wilkinson, a member of the Utah State Bar, announced as an opposing candidate for the office. Thereafter Judge Snow died and the Governor, whose duty it is to appoint judges to office when a vacancy occurs, brought this case to determine whether or not a vacancy in office exists by reason of the death of Judge Snow.

Our statute[1] provides as follows:

> (6) In cases where one or more members of the bar have filed a declaration of candidacy against a justice or judge who has filed a declaration of candidacy, then

> · · ·

> \*    \*    \*    \*    \*    \*

> (2) if one or more candidates die, resign or become disqualified prior to the general election leaving only one candidate remaining, such candidate shall be issued a certificate of election to serve until the next general election . . .

Under this statute, if it is valid, Mr. Wilkinson should take the oath of office and serve as a district judge until the general

---

4. See *University of Utah v. Board of Examiners, etc.*, 4 Utah 2d 408, 295 P.2d 348 and authorities therein cited; *State Board of Education v. State Board of Higher Education*, 29 Utah 2d 110, 505 P.2d 1193.

1. 16 Am.Jur.2d, Constitutional Law, § 65—see also cases cited therein.

1. U.C.A.1953, Sec. 20–1–7.7(6) Enacted by Laws of Utah 1969, Ch. 47.

election in November 1980. The question posed, however, is this: Is the statute above set out constitutional?

Originally all judges were elected by vote at the general election held biennially.

On January 1, 1945, our state Constitution [2] was amended and ever since then has read as follows:

Sec. 3 [Selection of judges—Method of—Basis of selection.]

Judges of the Supreme Court and district courts shall be *selected* for such terms and in such manner as shall be provided by law, *provided, however, that selection shall be based solely upon consideration of fitness for office* without regard to any partisan political considerations and free from influence of any person whomsoever, and provided further that the method of electing such judges in effect when this amendment is adopted shall be followed until changed by law. (As amended November 7, 1944 effective January 1, 1945.) [Emphasis added.]

It thus appears that a method of *selecting* judges must be different from that which existed prior to the amendment. If it was intended that a judge could be *elected* to office from a list of lawyer candidates by the old method of wide-open elections, then the amendment to the Constitution was not needed. The amendment provided that the old method would continue until changed by law. When the old method of election of judges was changed by law it was necessary that the method of *selecting* must be based solely upon fitness for office.

The method of choosing candidates which complies with the Constitution is provided for in U.C.A., 1953, Sec. 20–1–7.6 which reads:

(a) If a vacancy occurs or is about to occur in the office of a justice of the Supreme Court or a judge of any district court, the chief justice shall, as soon as practicable, convene the appropriate judicial nominating commission for the office to be filled. Not later than 45 days after such notification, such commission shall certify to the governor a list of three persons having the qualifications required by law to fill such office, who are willing to serve and *who possess the ability, temperament, training, and experience which fits them for such office* as determined by at least a majority of the members of the commission. . . . [Emphasis added.]

(b) The governor shall forthwith appoint one of the three persons named on the list of nominees to fill such office. If the appropriate judicial nominating commission has failed to certify such a list to the governor before the expiration of the 45-day period provided in subsection (a) of this section, the governor may appoint any person who has the qualifications for such office required by law, except a member of such commission.

(c) In the event the governor fails to appoint one of the three persons named on the list within 30 days after he has received the list, the chief justice of the Supreme Court shall forthwith appoint one of the persons named on the list to fill such office.

The part of the statute (20–1–7.7(6)) set out above, insofar as it permits any lawyer to oppose an incumbent judge, seems to me to run counter to Article VIII, Section 3 of our Constitution in that a person may be *elected* as a judge without being *selected* solely "upon consideration of fitness for office."

I do not mean to denigrate the ability of Mr. Wilkinson; I simply say that the statute which permits one to be *elected* without being *selected* solely upon consideration of fitness is bad.

The statute [3] contains a provision which reads as follows:

If any provisions of this act, or the application of any provisions to any persons or circumstances, is held invalid, the remainder of this act shall not be affected thereby.

---

2. Art. VIII, Sec. 3.

3. U.C.A., 1953, Section 20–1–7.9, enacted by Laws of Utah, 1967, Chapter 35, Section 10.

If we eliminate the unconstitutional part of the statute which permits any lawyer (regardless of fitness for office) to be elected, the remainder of the statute complies with the provisions of the Constitution. The statute then would require every judge to be *selected solely upon consideration of fitness for office.* The public would have the final determination of whether he could retain that office, for he would be required to run (unopposed) at the next general election on a non-partisan ballot which would simply state:

"Shall this judge be retained in office?"

If the majority of votes were to be that he not be retained in office, then the process of *selecting* a judge based solely upon fitness for office would again be brought into operation. Thus we would always have in office a judge who had been *selected solely upon fitness for the position.* The voting public could always remove an incompetent judge who was unacceptable: but could not by vote place an incompetent judge on the bench.

To me, that is what the Constitution requires. I think there is a vacancy on the bench which requires the selection committee to meet and submit to the Governor three names of lawyers who possess the constitutional qualifications for the office. The Governor would then proceed to appoint one of them to fill the vacancy.

This holding would then comply with the Constitution which requires *selection* to office and does not mention *election* which was the old way of choosing judges. The amendment demands *selection* and prevents *election* of judges.

HALL, Justice (dissenting):

I respectfully dissent.

The applicable constitutional provision in need of construction reads as follows:

Judges of the Supreme Court and district courts shall be selected for such terms and in such manner as shall be provided by law, provided, however, that selection shall be based solely upon consideration of fitness for office without regard to any partisan political considerations and free from influence of any person whomsoever, and provided further that the method of electing such judges in effect when this amendment is adopted shall be followed until changed by law.[1]

Amended in 1945, this present section specifically eliminated partisan selection of judges and substituted in lieu thereof a requirement for selection based upon merit and fitness.

The fact that the requirement of selection "be based solely upon consideration of fitness for office" is *mandatory* is clearly borne out by a further constitutional provision which specifically so provides as follows:

The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.[2]

In keeping with the constitutional authority set forth in said Article VIII, Section 3, as amended, the Utah Legislature established by statutory enactment two exclusive methods of selecting judges on a non-partisan basis. In doing so, they adopted what has been referred to as a *modified* "Missouri Plan."[3] Certain of our sister states have adopted the *true* "Missouri Plan" which basically provides for an initial appointment on the basis of merit and fitness from a list of three nominees presented to the Governor by a judicial selection commission. At the end of the appointive term the appointee simply runs "on his record" on a Yes ( ) No ( ) ballot, would-be challengers being prohibited from filing as candidates against him. Other states have retained the wide open direct election process, some partisan and some non-partisan, which allows any and all challengers to file against the incumbent.

1. Article VIII, Section 3, Constitution of Utah.

2. Article I, Section 26, Constitution of Utah.

3. So named by virtue of its initial adoption in the State of Missouri.

As indicated supra, Utah has two exclusive methods of selecting judges. The first such method of selection is provided for by gubernatorial *appointment* in the manner as set forth in U.C.A., 1953, 20–1–7.6 which reads in pertinent part as follows:

20–1–7.6 When judicial nominating commissions convene—Notice—Certification to governor of nominees—Meetings to investigate prospective candidates—Appointment by governor or chief justice—Term of office of appointee.—(a) *If a vacancy occurs or is about to occur* in the office of a justice of the Supreme Court or a judge of any district court, the chief justice shall, as soon as practicable, convene the appropriate judicial nominating commission for the office to be filled. Not later than 45 days after such notification, such commission shall certify to the governor a list of three persons having the qualifications required by law to fill such office, who are willing to serve and who possess the ability, temperament, training, and experience which fits them for such office as determined by at least a majority of the members of the commission. . . .

(b) *The governor shall forthwith appoint* one of the three persons named on the list of nominees to fill such office. If the appropriate judicial nominating commission has failed to certify such a list to the governor before the expiration of the 45-day period provided in subsection (a) of this section, the governor may appoint any person who has the qualifications for such office required by law, except a member of such commission. [Emphasis added.]

The second method of selection is provided for by *election* in the manner as set forth in U.C.A., 1953, 20–1–7.7 which reads in pertinent part as follows:

20–1–7.7 Election following appointment to judicial office—Declaration of candidacy by appointee—By members of bar—Certification of candidates to county clerks—Determination of winners.—(1) Any justice of the Supreme Court or judge of any district court who holds office under appointment by the governor shall hold the office until he or his successor is elected and qualified, which election shall take place at the general election next succeeding the appointment, except that if the appointment is made subsequent to the last date such appointee may file a declaration of candidacy, the election shall take place at the general election following the one which next succeeds the appointment. The person so elected shall hold the office for the remainder of any unexpired term. If the appointee desires to retain such office, he shall file a declaration of candidacy with and pay a filing fee of $50 to the secretary of state during the month of June prior to such general election.

(2) Any incumbent justice of the Supreme Court or judge of any district court who holds office pursuant to election and whose term of office expires in January next following a general election may, if he desires to retain such office, file a declaration of candidacy with and pay a filing fee of $50 to the secretary of state during the month of June prior to such general election.

(3) *If a declaration of candidacy is so filed by any such justice or judge, any qualified member of the bar desiring to become a candidate for such office may also file a declaration of candidacy* with and pay a filing fee of $50 to the secretary of state prior to 5:00 p. m. on the second Friday of July prior to such general election, which declaration shall specify the justice or judge against whom the declarant is a candidate . . .

\*    \*    \*    \*    \*    \*

(5) If no member of the bar has filed a declaration of candidacy for such office, then at the general election the ballots shall contain as to each justice of the Supreme Court or judge of a district court, to be voted on in said county the following question: Shall (name of justice or judge) be retained in the office, of (name of office, such as 'Justice of the Supreme Court of Utah' or 'Judge of the District Court of the Third Judicial District')? Yes ( ) No ( ).

(6) In cases where one or more members of the bar have filed a declaration of candidacy against a justice or judge who has filed a declaration of candidacy, then (1) if all such candidates die, resign or become disqualified prior to the general election, a vacancy shall occur in such office and such vacancy shall be filled in the manner provided in section 20–1–7.6, (2) *if one or more candidates die, resign or become disqualified prior to the general election leaving only one candidate remaining, such candidate shall be issued a certificate of election* to serve until the next general election at which time such candidate shall, if he desires to retain such office, file and run for the unexpired term of such office in the manner provided in this section, except that if the candidate holds office pursuant to election and is a candidate to succeed himself in office, he shall be issued a certificate of election for the term of office provided by law . . . [Emphasis added.]

Turning now to the basic constitutional question before us, the fact that our unique "modified Missouri Plan" permits the selection of a judge by the *electorate* as well as by gubernatorial appointment does not render it constitutionally infirm. The terms "select" and "elect" are substantially, if not wholly, synonymous when viewed in the context of the subject matter of this case. Webster[4] defines "elect" as: chosen especially by preference or for excellence; carefully selected; to make a selection of; and defines "select" as: chosen from a number or group by fitness or preference.

The fact that the voters may elect a judge is not to be taken as less than a "selection" as is required by the Constitution. When a candidate, otherwise qualified, sees fit to challenge one who has been previously appointed on the basis of merit and fitness, simple logic dictates that the electorate stands in an excellent position to compare the basic qualities of merit and fitness of the respective candidates with those of the incumbent and thereafter exercise their *choice* or *selection*. It is not to be said that an informed electorate is any the less capable of making a constitutional selection of a judge, "based solely upon consideration of fitness for office without regard to any partisan political considerations," than is the Governor.

Article I, Section 2, of the Constitution of Utah provides in part that "[a]ll political power is inherent in the people . . ." and this Court most recently observed that both Constitutional and statutory provisions currently in effect mandate that members of the judiciary present themselves to the electorate for approval whether after appointment or by declaration as a candidate.[5]

In light of the foregoing, the provisions of subsection (6) of U.C.A., 1953, 20–1–7.7 set forth above need close scrutiny. That subsection dictates the issuance of a certificate of election to a sole surviving candidate and thus would permit one to occupy judicial office without the benefit of *selection* either by *appointment* or *election*. Not only does that provision circumvent the mandate of the Constitution but it also runs directly and irreconcilably counter to said U.C.A., 1953, 20–1–7.6(6), supra, which provides for the filling of judicial vacancies by gubernatorial appointment.

Wilkinson contends by way of his demand for alternative relief, that this Court could place him in compliance with the foregoing Constitutional and statutory provisions by declaring that his name should appear alone on the ballot in a "Yes ( ) No ( )" context. However, that contention is without merit since there is absolutely no such provision in the law as now constituted and we so ruled in our minute entry in this matter dated October 12, 1978.

Given the high degree of accountability that all constitutional officers generally have to the electorate, it can only be viewed as *constitutionally* sound for the Legislature to afford the electorate with an opportunity to either confirm a judge's appointment or to elect a new one of their choice.

---

**4.** Webster's Third New International Dictionary Unabridged 1961.

**5.** *Monson v. Hall*, Utah, 584 P.2d 833 (1978).

Constitutional compliance is clearly achieved by a "selection" by the electorate. To construe the Constitution otherwise would be to deprive the electorate of its choice in candidates which has been afforded by the Legislature in a valid exercise of its powers.

A further statutory provision[6] reads in part as follows: "If any provisions of this act . . . is held invalid, the remainder of the act shall not be affected thereby." Consequently, a declaration of unconstitutionality of that portion of the act which provides for the issuance of a certificate of election without there having been in fact an election, would in no way invalidate the remaining portion of the act.

There being in fact a vacancy occasioned by the death of Judge Marcellus K. Snow, I would affirm the trial court and require said vacancy to be filled by appointment pursuant to the provisions of U.C.A., 1953, 20–1–7.6.